Davis and Redding *vs.* The Cent. R. R. & B'kg Co.

No. 60.—BENJAMIN DAVIS, plaintiff in error, *vs.* THE CEN-TRAL RAIL ROAD & BANKING COMPANY, defendant. ROW-LAND REDDING *vs.* THE MACON & WESTERN R. R. CO.

[1.] The Act of the 20th February, 1854, " to define the liabilities of the several Rail Road Companies of this State, for injury to or destruction of live stock, killed or injured," &c. is not in violation of the Constitution of the State.

[2.] Nor is it in violation of the Constitution of the United States.

Trespass, in Bibb Superior Court. Tried before Judge HARDEMAN, November Term, 1854.

This was a proceeding in the County of Bibb, against the Central Rail Road & Bk'g. Co., for killing two mules belonging to the plaintiff.

The case turned upon the constitutionality of the Act of 1854, which authorized such proceedings against Rail Road Companies, to be had in the County where the fact occurred, and the point was brought up by the defendant's plea to the jurisdiction of the Court, which was sustained by the Court; and the Act in question was held to be unconstitutional.

On this decision error is assigned.

Proceeding to assess damages on appeal, in Monroe Superior Court. Decision by Judge STARKE, September Term, 1854.

This was a proceeding under the Act of 1854, entitled "an Act to define the liabilities of the several Rail Road Companies of this State, for injury to or destruction of live stock, killed or injured; or for destruction of or injury or damage to property other than live stock, by the running of cars, engines, &c. &c." The Rail Road Company filed a plea to the jurisdiction, on the ground that the corporation had its residence in Bibb County, and that its President and principal officers resided there; and that all suits against them should be in that County. The Court over-ruled a demurrer to this plea, hold-

ing the said Act of 1854 to be unconstitutional and void.   This decision is assigned as error.

PINKARD, STEVENS, HARMAN and STUBBS & HILL for plaintiffs in error.

POE, CABINESS, HAMMOND, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

These two cases were argued and decided together.  In each is but a single question, and that is common to both.   The Courts below, from which the cases respectively come, decided the Act of the General Assembly of the 20th February, 1854, to define the liabilities of the several Rail Road Companies of this State, for injuries done to stock, &c. by their cars, &c. and to regulate the mode of proceeding in such cases, &c. to be unconstitutional.   And those are the decisions assigned as error in this Court.

Consulting convenience, I shall treat those decisions separately, beginning with that rendered in the case of *Davis against the Central Rail Road & Banking Company.*

The Court below held the Act aforesaid to be unconstitutional—was that decision right?   This is the sole question.

The Act declares, in substance, that the Rail Road Companies of this State, for injuries done by them, to stock, &c. shall be liable to be sued, in the counties in which the injuries may have been committed.

This Act the Central Rail Road & Banking Company says, violates both the Constitution of the State and that of the United States—violates the part of the Constitution of the State, which is in these words: "The Inferior Courts shall also have concurrent jurisdiction in all civil cases, except in cases respecting titles to lands: which shall be tried in the County wherein the defendant resides;" and violates that part of the Constitution of the United States, which is in these words:

"No State shall" "pass any" "laws impairing the obligation of contracts."

And to show the Act to violate this part of the Constitution of *the State*, the argument of the Rail Road Company is as follows:

This part of the Constitution, declaring that no person shall be sued elsewhere than in the county in which he resides, declares, in effect, that the county in which a person resides is to be ascertained by the law of residence, in force at the time of the declaration i. e. at the time of the making of the Constitution.

That that law, therefore, is not subject to repeal or change by the Legislature.

That by that law, all Rail Road & Banking Corporations reside at the place where they keep their "principal office."

That when the Act aforesaid was passed, the Central Rail Road & Banking Company kept its principal office at Savannah, in the County of Chatham.

That, therefore, when the Act was passed, the Company, by that irrepealable law, resided in Chatham; and so, by the Constitution, was subject to be sued only in Chatham.

But that notwithstanding this, the Act of the Legislature aforesaid, says either this, I repeal that law which makes the residence of a rail road corporation the place at which it keeps its principal office; and henceforth, wherever such a corporation injures stock, &c. there I make its residence to be, and there I make it suable.

Or this—I do not repeal that law; and yet, wherever such a corporation injures stock, &c. there I make it suable.

That whichever of these two things it is that the Act says, it does what the Constitution declares shall not be done.

And therefore, that the Act violates the Constitution.

This is the argument of the Rail Road Company.

In this argument, one of the propositions is, that by the law as it existed at the time of the making of the State Constitution, the place of residence of a Rail Road Corporation, is the place at which it keeps its principal office; and this proposi-

tion, it was insisted, is sustained by several decisions, and among them the decision of this Court, in the *The Central Bank vs. Gibson*, (11 *Ga. R.*)

But this is not the proposition which that decision goes to sustain. The proposition which that decision goes to sustain is this: that if the charter of a bank says, the bank shall be established at a particular place, *the charter, itself,* means to say that the bank shall be a resident of this place. In other words, the decision is, that if the Legislature plainly says, a corporation's residence is to be at a particular place, its residence is to be at that place. But it is not the decision, that if the charter of a bank says only, that the bank is to have its "principal office" at a particular place, the charter says, in effect, that the bank shall be a resident of that place, much less is it the decision that this is so, when the charter is the charter, not of a bank, but of a rail road. NISBET, J. who delivered the opinion, seeming to speak for himself alone, it is true, says that if the charter had not determined the locality of the bank, he should have held it a resident for the purposes of a suit in the county in which was its place of business. But in what county is the place of business of a rail road? Is the business of a common carrier done in a house? What would have been his Honor's opinion on this point, does not appear. This, however, is what his Honor says, when apparently speaking for the Court. However plausible the idea may be, that a corporation, an intangible entity, deriving its existence and all its functions from the Legislature, and possessing no personality, is ubiquitous within the limits of the State, in the absence of any designation of its locality; yet, in this case it has no application, because the *charter* of the Central Bank fixes its locality at *Milledgeville—there*, therefore, it is suable—*there* it is made by law commorant. It is an artificial person, *resident* by legislative enactment, at *Milledgeville*. The Charter provides "that a bank shall be established in behalf of the State of Georgia at Milledgeville, in said State, to be known and called by the name and style of the Central Bank of Georgia." (*Prince*, 72.) This seems to be conclusive of this question.

The provision in the charter of the Central Rail Road and Banking Company is this: " The principal office of the said Company shall be located at Savannah, with subordinate offices or agencies at Macon and such other places as the board of directors shall determine, and all elections and meetings of stockholders shall be held at such principal office only." This is not the same as would have been a provision, that the corporation " shall be established" "at" Savannah.

And to say that a person's office of business shall be at a particular place, is not necessarily to say that the person's residence shall be at that place. There is a Statute which declares, that the Clerks of the Superior and Inferior Courts and of the Courts of Ordinary shall keep their offices, books and papers, at the court house of their respective counties, or within one mile thereof: but did any body ever think that this was saying that the courthtouse, or some place within a mile of it, was to be the residence of those clerks? On the contrary, the implication is, that though these Clerks may reside any where, they must keep an office at the court house. (*Cobb's Dig.* 199.)

The proposition, then, is not established by this case.

Another of the cases which it was argued gave the proposition support, was that of the *Louisville Rail Road Company vs. Letson* (2 *How.* 558.) The decision in that case was, that a Rail Road corporation is a "citizen" of a State; and to be that, the decision had to over-rule two other decisions previously made by the same Court, viz: *Bank U. S. vs. Deveaux,* (5 *Cranch.* 91.) *Com. B'k of Miss. vs. Slocomb,* (14 *Peters,* 60.) And of these two decisions, the former was a leading one—was made after argument elaborate and able—argument, in which Binney, and Key, and Harper, and Ingersoll, and Adams took part. In a case thus argued, the Court could not tolerate the notion that a corporation is a citizen—it could go no further than to say, in effect, that a corporation is a partnership, and that in partnerships the individual members may be citizens. The Court had to go this length to get jurisdiction, and truly this was going a a great length for jurisdiction or for any thing else—much too far, I shall not dispute.

The case aforesaid of the *Rail Road Company against Letson*, however, over-ruled these two cases and decided a rail road corporation to be a citizen of a State. That decision, too, had to be made to enable the Court to get jurisdiction; and although it may be thought to go fully as far for that as the cases over-ruled had gone for it, yet the decision goes no part of the way towards showing that the place of residence of a corporation is the place where it keeps its principal office. That decision merely said that the rail road corporation in question in the case, was an inhabitant and a citizen of the whole State of South Carolina.

Another of the cases referred to as supporting the proposition aforesaid, was *Cromwell vs. Ins. Co.* 2 *Rich,* (*S. C.*) *R.* 512. But that case is not in point.

The cases then cited by the defendant in support of the proposition, are not sufficient to support it. Let it be borne in mind what the proposition is, viz: that the residence of a rail road corporation, is where it keeps its principal office.

With respect to this proposition, there is, however, something more to be said.

The decision in *Rex vs. Gardner, Cowp.* 79 is, that a corporation, seized of land in fee for its own profit, is within the meaning of the Statute 43 *Eliz. c.* 2, inhabitants or occupiers of such lands, and in respect thereof, liable in its corporate capacity to be rated to the poor. And Lord *Coke,* in his exposition of the Statute of the 22 *Hen. VIII, c.* 5, says: "Every corporation and body politic residing in any county, riding, citie or towne corporate, or having lands or tenements in any shire, riding, city or towne corporate *quae propriis manibus et sumptibus possident et habent* are said to be inhabitants there within the purview of this Statute." (2 *Ins.* 703.) And he derives the word inhabitant from the word *habeo,* and says that wherever a man *has* lands he *inhabits;* that if the man has lands in different places, he is an inhabitant of all of the places. (*Id.* 702.) His words are, "although a man be dwelling in an house in a forraigne county, siding city, or towne corporate, yet if he hath lands or tenements in his own possession, and

manurance in the county, siding, citie or towne corporate where the decayed bridge is, he is an inhabitant, both where his person dwelleth and where he hath lands or tenements in his own possession within this Statute. *Nota, habitatio dicitur ab habendo, quia que propriis manibus et sumptibus possidet et habet ibi habitare dicitur.*" Inhabitants is the only word used in the Statute.

According to these authorities, certain corporations, for the limited purpose of a liability to taxation under these two Statutes of *Henry VIII.* and *Elizabeth,* are to be considered as capable of being "inhabitants"—capable of being "occupiers," and as actually being "inhabitants" or "occupiers," in all places in which they have lands or tenements. What Lord *Coke* meant by the word "residing," is not clear. He may have meant that every corporation is to be considered as residing in a county whose head resides in the county, or whose managers, or whose members reside in the county, or whose business or whose chief business is carried on in the county, or whose charter says, that it shall reside in the county. What is clear, however, is, that corporations, for the purpose of being taxed under these two Statutes, were held to be inhabitants of every place in which they had lands or tenements.

And if there is any English authority going to show that corporations are capable of being inhabitants, occupiers or residents, under any rule of the Common Law, or under any other Statutes than these two, or under these two, for any other purpose than that of a liability to be taxed, I am not aware of the authority.

Let it be admitted, however, that the English law was such, that under it corporations were not only capable of being inhabitants and residents, for all purposes, but were actually inhabitants and residents, for all purposes, in all places in which they either had lands or tenements, or in which they did business. Let this be admitted to have been the English law.

Then, it follows, that this is the law which Georgia adopted, when she adopted the English law generally. And it may be

assumed, that the law on this subject—the residence of corpo-
rations, which Georgia adopted, was the law which was in force
within her limits, at the time when she was making her Consti-
tution, and was therefore the law which she had reference to, if
she had reference to any existing law, as the law for ascer-
taining the residence of corporations.

But this law is very different from what is assumed in the
proposition of the defendants under consideration, to have been
the law.   In that proposition, the law is assumed to have been,
that a corporation's residence, is at the place at which it keeps
its principal office; or say, at which it does its chief bus-
iness, and at no other place.   This law is, that a corpora-
tion's residence is not only at the place at which it keeps its
principal office, but also at any place *where it has lands or ten-
ements*.

And if this was the law which the Constitution had refer-
ence to, and which, if any, it impliedly declared irrepealable,
the Act of the Legislature in question cannot be in conflict
with the Constitution, for that Act, in providing that rail road
corporations may be sued wherever, by their engines, &c. they
kill stock, does no more than provide that they may be sued
wherever they have *lands*—they having lands wherever their
engines go; and so, does no more than provide that they may
be sued where they reside.

But, indeed, it is not to be conceded, except for the sake of
argument, that this was ever the English law, or that if it ever
was, it was adopted by Georgia.   Even if Georgia adopted the
two Statutes of *Henry VIII.* and *Elizabeth*, together with the
interpretation put on them, that they extended, by the use of
the words, "inhabitants" and ."occupiers," to corporations,
there is much evidence going to show, that outside of those
Statutes, she considered corporations as not being "inhabi-
tants" or "residents."

1. In a similar Statute of her own—the Statute of 1821, to
authorize the Justices of the Inferior Courts to levy extraordinary
taxes for county purposes, she uses the word *inhabitants*, de-
claring that the Justices of the Inferior Courts shall have

Davis and Redding *vs*. The Central R. R. & B'kg Co.

power " to levy, upon the inhabitants of any county in which the said Justices may reside, a tax, extraordinary of the general State tax." (*Cobb's Dig*. 184.)    And yet, this power, as far as I know or believe, has never been considered as authorizing the Justices of the Inferior Courts to tax banks, rail roads or other corporations, although it is a power that authorizes them to tax all "*inhabitants.*"    Have banks and rail roads ever paid tax under this power ?    Have they ever paid the tax, either in the county in which they had lands—in which they were therefore inhabitants, if holding lands could make inhabitants, or in the county in which they had their chief office ?    Never, in either, I think.    If they never have the inference is pretty strong, that the word "inhabitants," in this Statute, was not intended to include corporations.    The Statute is over thirty years old.    It is true, that the charters of some of these corporations may, perhaps, exempt the corporations from this tax; at least, as far as their stock is concerned.

And if this be the interpretation which Georgia puts upon the word "inhabitants," in a Tax Statute of her own, the effect, may, perhaps, be thought sufficient to overbalance the effect of the opposite interpretation, which Lord *Coke* puts upon the word in the English Statute.

2. And the notion, that corporations have not been considered, in Georgia, inhabitants or residents of any particular county or place, derives support from the nature of several of her general Tax Laws.    Thus, the Act of 1817, providing for a tax on bank stock, makes the tax returnable and payable, not to the Tax Receiver and Collector, respectively, of *any county*, but to the Treasurer of *the State*.    (*Cobb's Dig*. 1063.)

The same thing, as to stock in the steamboat company, is done by the Act of 1821.    (*Cobb's Dig*. 1064.)    And as to the stock in rail roads, by the Act of 1850.    (*Id*. 1079.)

Whereas, the Act of 1830, (*Id*. 1067,) which is made for *private* bankers, &c. provides that such bankers, &c. shall make their tax returns and payments to the Tax Receivers and Tax Collectors of the counties; and thus, seems to say, that

as to them, they stand on a different footing from that of incorporated banks, and are inhabitants and residents of the counties, like any other natural persons are.

If the true interpretation of these State Statutes be, that they do not include corporations, though they use the word "*inhabitants*," a foundation is laid for an inference, more or less strong, that the true interpretation to be put upon the Constitution, though it uses the cognate but narrower word, "*resides*" is, that the Constitution does not include corporations.

But at least this much may be said with confidence : that from these Statutes no argument is to be drawn in favor of the proposition, that a corporation resides in the particular place in which it does its business.

3. On the other hand, the practice of suing banks in the counties in which they do their business, may be thought to furnish an argument in favor of the notion, that banks reside in those counties.   The argument, however, will not bear examination ; for why is it that suits are brought against banks in such counties :   Because they are the counties in which banks do their business ?   No—but because they are the counties in which the presidents or heads of the banks reside.   These reside at the places at which the banks do their business ; and it is upon them that suits against the banks have to be served.

At least, this was so until lately.   If it had been the law, that banks resided where they did their business, a different sort of practice would have grown up, viz : a practice of serving suits on banks by the leaving of a copy of petition and process at the place at which they did their business ; for it has been lawful to serve defendants by the leaving of such copy at their residence, almost ever since Georgia became a State—ever since the passage of the Judiciary Act of 1778. (*Watk. Dig.* 220.)

Recently, however, the law in this respect was changed.   In 1845, the General Assembly passed an Act declaring, that "process necessary to the commencement of any suit against any corporation," "may be executed, by leaving the same at

the place of transacting the usual and ordinary public business of said corporation," &c.   And the fact, that this Act was passed, is evidence that the Legislature thought the place of business of a corporation, not to be the place of its residence. Else, why pass the Act.

And did the Legislature mean, even by *this* Act, to say, that the place of business is the place of residence?   The terms of the Act are consistent with that idea, but then they are by no means inconsistent with the idea, that the Legislature intended nothing about residence—with the idea, that it considered corporations as not "inhabitants"—as not residents, —as not at all within the word of the Constitution—resides— and so, not inconsistent with the idea that the Legislature considered them as subject to be made suable at such place as it might see fit to appoint.

One thing, however, is clear, and that is this: if it was by this Act that the place of business of corporations, became also their place of residence, equally, by another Act, another place may become their place of residence—in other words, it is clear, that what shall be the place of residence of a corporation, is a question over which the Legislature has power.

Upon the whole, we avoid expressing an opinion as to whether the defendant's proposition is true or not—the proposition, that the place of residence of a bank or rail road corporation, is the place at which it keeps its principal office, or does its chief business.   The decision we make, turns upon another point— one as to which we have a clear view.

It may not be improper, however, that I say for myself, that I incline, very strongly, to the opinion, that corporation defendants, are not included in the words of the Constitution —the words " cases" "which shall be tried in the county wherein the defendant resides."

When these or words of the same import were first used by the State, there were not, as I think, in existence, in the State, any corporations liable to suit; and so, not in existence any to be of the defendants, that were in the contemplation of the makers of the Constitution, when they said, defendants were to

be sued in the county in which they resided.    The words were first used in the Constitution of 1777.

In the view we take of the case, it may be conceded, that a corporation has residence, and that that residence is its place of business; and yet, the Act in question be constitutional.

*Do* the words of the Constitution, "which shall be tried in the county in which the defendant resides," mean to say, that the county in which a defendant resides, is to be ascertained, only by the law in force at the time of the making of the Constitution—that the law of residence, at that time in force, shall not be subject to alteration or repeal by the Legislature, as it is insisted by the defendant in error they do?    In the opinion of this Court they do not.

The words are satisfied, if the defendant be sued in that county in which he has been made to reside, by an Act of the Legislature.    When, by a Statute, he has been declared to reside in a particular county, and he is afterwards sued in that county, why is he not sued "in the county in which" he "resides?"    Had the words of the Constitution been, "which shall be tried in the county in which the defendant resides—his residence to be determined by the law now"—(i. e. the time of the making of the Constitution,) "in force"—then, power over the law of residence would have been taken from the Legislature.    But these are not the words.    And what reason can there be, why the power of the Legislature over residence, as it respects defendants to suits, should be taken away, and yet, the power be left over residence, as it respects voters, road hands, militia men—persons in all other relations or capacities?

The sort of interpretation that would take from the Legislature power over the law of residence, applicable to defendants, would equally take from it power over the law regulating county lines.    The same Constitution declares, that all criminal cases, with some exceptions, "shall be tried in the county where the crime was committed;" and that all cases respecting titles to lands, "shall be tried in the county where the land lies."    But has the Legislature, by this, been deprived of power to say, after the time when a crime has been committed,

or when a cause of action for land has arisen, that the county in which the crime was committed or the cause of action arose, should have an addition made to it here, or a subtraction from it there—should be divided into two counties? And yet, any change of this sort, made in the county, produces a change in the state of things, on which the fate of the suit is to depend. It adds to or diminishes the number of persons from whom the Jury is to be got—may alter the mode of reaching witnesses, and may make other changes affecting the suit.

It has never been thought, that by these words, the Legislature has been deprived of any power over county lines. And the power over county lines is one which the Legislature has exercised as often, perhaps, as it has any other. So, too, the Legislature has felt itself empowered to say what is residence, and it has said what it is. This it has done in a general Act, entitled "An Act to more fully define the legal residence of citizens and inhabitants of this State." That is the Act of 1838. (*Cobb's Dig.* 530.) The power of the Legislature to pass this Act, has never been questioned. This Act relates to the residence of natural persons; but if the Legislature have power over the law of residence as to natural persons, they must, at least, equally have power over the law of residence, as to artificial persons.

This Act may be thought, perhaps, to throw some light on the question discussed in the first part of this opinion. The title of the Act is more fully to define the legal residence of citizens and inhabitants of this State—that is to say, of all who are citizens and inhabitants of this State. The preamble is equally broad. And yet, the body of the Act restricts itself to defining the residence of natural persons, as if the opinion of the Legislature was, that natural persons had a residence, but that artificial persons had none.

Upon the whole, what we think was meant by the part of the Constitution in question, is this: that all civil cases are to be tried in the county in which the defendant resides—the county in which he resides being to be ascertained by the law of residence, which may happen to be in existence at the time

when the case arises, or perhaps, at the time when the case is. to be tried.

Having this view of this part of the Constitution, we of course have to regard the subject of residence, whether of natural persons or artificial persons, as within the power of the Legislature.

That being so, the question left, as to the Statute's being a violation of the State Constitution, is, whether the Legislature intended, by the Statute, to say, that the residence of rail road corporations, for the purpose of a liability to suit, should be deemed to be in the places in which, by the Statute, it authorized suits against such corporations to be brought.

The Statute declares, in substance, that rail road corporations shall be suable in the several counties, through or into which their rail roads pass. Suppose it had said that such corporations should be considered as residing in such counties, for the purpose of a liability to suit in the counties? If it had said this, it would, in the view which we have taken of the Constitution, have said nothing against the Constitution. And yet, what is the difference between this and what the Statute does say? In effect, it is nothing. And ought a Statute, which, in effect, differs in nothing from what would be a constitutional Statute, to be itself considered unconstitutional? Rather, in such a case, ought not every possible presumption to be made to rebut the idea, that two departments of the Government, both sworn to support the Constitution, had violated the Constitution? Most certainly. It, therefore, may be well presumed, that the Legislature, in making these corporations liable to be sued in certain places, intended to make them, for the purpose of a liability to be sued in those places, residents of the places. Especially may this be presumed, when the questions, whether corporations have residence at all—whether, if corporations have residence at all, the residence of these corporations, was not already, by the old law, in the places in which this Statute says they may be sued—places in which they had lands—places in which, being common carriers, they

must have been doing much of their business—are questions of too much doubt.

[1.] This Court, therefore, cannot say that it considers this Act to be a violation of the Constitution of the State.

Is the Act a violation of the Constitution of the United States—of the clause in that Constitution which declares, that no State shall "pass any" "law impairing the obligation of contracts."

The argument for the defendant in error is, that the charter is a contract—that the law in existence when a contract is made, enters into the contract, as a part of it; that when this charter contract was made, there was a law in existence which rendered the place of the principal office of the corporation, the place of its residence, and another law, i. e. the State Constitution, in existence, which exempted the corporation from suit in every county, but the county in which was the corporation's principal office; that therefore, it was a part of the charter-contract, that the corporation should be sued in no other county than that in which was its principal office: but that this Statute declares the corporation to be subject to be sued in certain other counties, and that therefore it impairs the obligation of the said contract.

What has been said on the other branch of the case, shows that we consider this argument not to be good. The proposition, that the law in existence at the time when a contract is made, enters into the contract as part of the contract, may, as a general proposition, be admitted. But in the first place, the law which, in this argument, it is insisted, entered into the contract, if it be a contract, is not, in the opinion of this Court, well stated. For although it may be true, as the argument assumes it to be, that a defendant is, by law, to be sued in the county in which he resides; yet, it is equally true, as we have endeavored to show, that the county in which a defendant resides, is to be whichever one the Legislature shall say it is to be. And this being so, if any law, as to residence, entered into this charter-contract, it was not the law of residence in ex-

istence at the time of the making of the charter-contract, ab-
solutely, but that law conditionally—that law, on condition
that the Legislature should not see fit to change it.

.And in the second place, even if the law were well stated,
yet, it happens to be such law as constitutes. an exception to
the general proposition, that the law enters into contracts and
makes a part of them. This law is law which concerns not
the right, but the remedy. A suit is a remedy, and venue is,
but an incident of a suit.

The law of the venue of a suit, is more intimately related to
remedy, than is the law of limitations or the law of registry ;
and laws of limitation and of registry have ever been held to
be laws which solely concern remedy ; and so, to be laws
which do not enter into and become a part of contracts.

If the law of venue becomes a part of a contract, then so
also must the law organizing the Judicial office, the law regu-
lating pleading, appearance, evidence, Jury trial.

*This* Court was organized *after* the grant of the charter to
this corporation was made. What jurisdiction, therefore, has
it over this case, if the law that entered into the charter was,
that only Courts in existence at the time when the charter was
granted, were to have jurisdiction over the corporation.

[2.] This Statute, in the opinion of this Court, does not vi-
olate the Constitution of the United States.

It seemed to be assumed in the argument of the Counsel for
the defendant, that this Statute imposes novel, if not oppres-
sive terms of defence on the rail road corporations of the
State.

I will say a word as to this.

The principle of this Statute is, that in certain suits against
the rail roads, the venue of the suit shall be the venue of the
wrongful act.

This principle is certainly not a novel one. It is the prin-
ciple of the Common Law. It is a principle sanctioned and
affirmed by a Statute as old as the time of *Richard II.* It is
a principle which lies at the foundation of the doctrine of ve-

nue, as practised in England up to this day. The principle rests on the maxim, that *vicini vicinorum facta presumuntur scire*—a maxim that makes the suit seek the witnesses, rather than the witnesses seek the suit.

It is true, that in the course of time, this principle has, in England, undergone modification. But the modification has been to the disadvantage of defendants. Certain actions have been permitted to become transitory—the meaning of which is, that they may be brought in *any* county. These are personal actions. And these actions, when brought in any county, even if it be one ever so distant from that in which the cause of action originated, have to be tried where brought, unless the defendant shall make a special affidavit that he has a witness in the county in which the cause of action arose. If he makes such an affidavit, he may, in general, have the case transferred to that county—never to the county of his residence, except when the county of his residence may happen to be that in which the cause of action arose. (*Bac. Abr.* "*Actions, Loc. and Trans.*")

This is the present state of the law of England. And we hear of no complaints, on the part of defendants, in England, that the law, even in this state, is oppressive upon them. But how much more oppressive a law is it than the law declared by the Statute in question. By that law the county in which the defendant is to be sued, is not to be any county at the option of the plaintiff—it is to be only the county in which he does the act for which he is sued. He is to be sued in that county only in which his witnesses, it is to be presumed, will be most at his command. He is merely put upon the footing on which the Common Law puts all defendants, and the footing on which our own Constitution puts all defendants in criminal cases.

That a defendant is to be sued in the county in which he *resides*—this, in truth, is the novel rule—the rule that most lacks the sanction of an old and a wide experience.

And even if the rule established by this Statute be hard upon defendants, how very much harder would any other rule be upon plaintiffs. The rule that should require the plaintiff

to bring his suit in Savannah, for the loss of a pig or a cow, would, in most cases, be equivalent to the denial of a suit at all. Plaintiffs living at distant points on the rail road from Savannah, could not afford to pay the expenses that would be incident to such a suit.

In the opinion of this Court, the judgment of the Court below, holding this Statute to be unconstitutional, ought to be reversed.

And this disposes of the case against the Central Rail Road & Banking Company.

And from that case, there is nothing to distinguish the case against the Macon & Western Rail Road.

So the same judgment, in that case, ought also to be reversed.