EAST TENNESSEE, V. & G. R. CO. *et al.* v. ATLANTA & F. R. CO.

*(Circuit Court, S. D. Georgia, W. D.* February 24, 1892.)

1. RECEIVERS—JURISDICTION OF STATE AND FEDERAL COURTS—COMITY.
   Comity does not require that a federal court shall refuse to appoint a receiver for a railroad because of the pendency of a prior foreclosure suit in the state court, when such suit is admittedly an amicable proceeding, intended as a means of nursing the property into success, and it appears that there is no immediate purpose of procuring the appointment of a receiver therein.

2. SAME—PRIORITY OF SUIT AND OF POSSESSION.
   Where a receiver appointed by a federal court actually takes possession of the property, the jurisdiction of that court is complete, and possession will not be yielded to a receiver subsequently appointed by a state court, although the suit in the state court was commenced before that in the federal court.

3. SAME—POSSESSION—WHAT CONSTITUTES.
   The fact that the state court, prior to the appointment of the federal receiver, had granted an order restraining the officers of the company from using its funds for other than corporate purposes, does not show prior possession by it.

4. FEDERAL COURTS—JURISDICTION—RESIDENCE OF RAILROAD CORPORATION.
   Under the laws of Georgia, (Code, § 3406,) a railroad corporation is a resident of the entire state, and an inhabitant of all the counties through which the road runs, and may be sued in any of them. *Davis* v. *Banking Co.*, 17 Ga. 326, followed.

5. SAME—"INHABITANCY."
   Under Rev. St. U. S. § 739, declaring that civil suits shall only be brought in the district of which the defendant is an inhabitant, etc., a railroad company is an inhabitant of any district in which it operates its road through authorized agents. *U. S.* v. *Railroad Co.*, 49 Fed. Rep. 297, followed.

6. SAME—EFFECT OF STATE LAWS.
   When a federal court has general jurisdiction of the controversy, and the federal statutes give the plaintiff a choice as to the district in which he will sue, the jurisdiction thus obtained cannot be restricted by the laws of the state respecting the venue of causes.

7. SAME—REPEAL OF STATUTE—SUITS OF "LOCAL NATURE."
   Rev. St. U. S. §§ 740-742, relating to the districts in which suits of a "local nature" may be brought, were not repealed by the jurisdictional acts of 1875, 1887, or 1888.

8. SAME—RECEIVERSHIPS.
   A suit by creditors for the appointment of a receiver for a railroad is a suit of a "local nature," within the meaning of Rev. St. U. S. §§ 740-742, relating to the districts in which suits may be brought.

In Equity. Bill by the East Tennessee, Virginia & Georgia Railroad Company and the Western Railroad Company of Alabama against the Atlanta & Florida Railroad Company for injunction and the appointment of a receiver. Plaintiffs move for an attachment against T. W. Garrett for resisting the decree of the court and interfering with the possession of R. H. Plant, as receiver. Motion granted.

*Calhoun, King & Spalding,* for plaintiffs.

*Marion Erwin*, for R. H. Plant, receiver.
*Henry R. Jackson* and *John L. Tye*, for attachment defendant.

SPEER, District Judge.    It appears from the record and other evidence before the court that at 40 minutes after 9 o'clock on the 9th day of February we signed an order directing R. H. Plant, as receiver of the circuit court, to take possession of the property of the Atlanta & Florida Railroad Company.    The order was granted upon consideration of the bill before the court, and in view of its sworn allegations.    Mr. Plant, through his agent, immediately proceeded to take possession of the property as directed, and, according to his report, verified by oath, his agent and representative was in actual custody in the office of the company, the officers present having been notified of the order appointing him, when T. W. Garrett, superintendent of the defendant corporation, entered the office, and, having been informed by the agent of Mr. Plant of his possession as receiver, declined to recognize the same.    Mr. Garrett informed the agent of the receiver that he himself had been appointed receiver by the state court at 10 minutes after 11 o'clock.    The order put in evidence here by the respondent indicates that the appointment by the state court was made at 15 minutes after 11.    Then, in the presence of the agent of Mr. Plant, Mr. Garrett went to the telephone, and notified a Mr. Humphreys that he (Garrett) had been appointed receiver, and directed him to recognize his authority.    At this time the receiver of this court had been in actual possession for some time; how long, it does not distinctly appear.    It is therefore evident that the receiver of this court was appointed nearly two hours before the order appointing the receiver of the state court was granted by Judge CLARKE; and, further, that he was actually in possession when the receiver of the state court came in, announced his appointment, and attempted to take possession.    It is insisted, however, that the bill in the state court was pending for quite a while before the bill in this court was filed.    But it is perfectly evident that it was an amicable proceeding, to which certain creditors and the road were parties, with no immediate purpose to ask for the appointment of a receiver.    One of the learned counsel, Mr. Jackson, who has opposed this motion, who appears now for the respondent, and who states that he represents large interests in the bill in the state court, has stated in his argument here that the bill before that court was an attempt to "nurse the struggling little road into success," and he stated further that at various times counsel for and against the bill had consulted, and had endeavored, with success, to prevent Judge CLARKE from appointing a receiver.    No rule *nisi*, calling upon the defendants to show cause why a receiver should not be appointed, had been issued; and yet, notwithstanding these admitted facts, in two hours after the United States court had acted, we find that an order, granted by the consent of the parties, was taken, appointing a receiver of the state court.    On the other hand, the bill brought in the United States court is presented at the instance of creditors for a large amount, who appear to be earnestly insisting upon the payment of their debts.    If it be true, as

the bill alleges, that the East Tennessee, Virginia & Georgia Railroad Company and the Western Railroad Company of Alabama, the plaintiffs, are creditors of the Atlanta & Florida Railroad Company, must they be debarred the privilege of applying to a forum which they have a right to seek because there has been in the state court an amicable bill, intended to "nurse" their debtor into prosperity? Is it competent by a proceeding of that character for a portion of the creditors to take charge of litigation involving the entire assets of the company to "stand off" other creditors, urge the court to delay the relief which the bill apparently seeks, and then invoke the doctrine of comity to defeat an earnest attempt by the creditors to seek relief elsewhere? We think not. To apply the doctrine of comity to such facts would seem unwarrantable.

Nor does the mere pendency of the bill in the state court in itself deny to this court the power of appointing a receiver where it has jurisdiction of the parties, and where its action is otherwise proper. Nor will such pendency affect the title of the receiver of this court. The title of a receiver, on his appointment, dates back to the time of granting the order. Beach, Rec. par. 200. In cases of conflicting appointments, the courts will inquire into the priority of appointment, and, if necessary, will take into consideration fractions of the day. Id. 232. While courts of equity have insisted upon the doctrine of *lis pendens*, they have found it difficult, and often inequitable, to force it. Id. 200. The rule upon that subject in this state is deducible from the decision of the supreme court in *Bank* v. *Trustees*, 63 Ga. 552, where the court (JACKSON, Justice, delivering the opinion) uses this language:

"But it would seem here that the stockholders' bill has been pending here for a long time in the circuit court of the United States, and no receiver is yet appointed. Perhaps none ever will be. Is the judgment creditor to wait until one is to be appointed? He is not even in this case made a party to the bill in the United States court. If he were, and if the bill there filed was similar to this in review here, and could accomplish the same end, to-wit, the collection of this debt by the judgment creditor, having the final process of the state court in his hands, even then we should rule that neither law nor equity nor comity would require the equity court to wait upon the United States court in a case like this."

The application of that decision is that neither law, equity, nor comity will require the United States court to wait upon the state court in a case like this.

In a very carefully considered case, Mr. Justice BRADLEY, while presiding in this circuit, gave a controlling definition of the law. In *Wilmer* v. *Railroad Co.*, 2 Woods, 426, the learned justice used this language:

"This test, I think, is this: not which action was first commenced, nor which cause of action has priority or superiority, but which court first acquired jurisdiction over the property. If the Fulton county court had the power to take possession when it did so, and did not invade the possession or jurisdiction of this court, its possession will not be interfered with by this court. The parties must either go to that court, and pray for the removal of its hand, or, having procured an adjudication of their rights in this court, must wait till the action of that court has been brought to a close, and judicial possession has ceased. Service of process gives jurisdiction over the person,—seizure

gives jurisdiction over the property; and, until it is seized, no matter when the suit was commenced, the court does not have jurisdiction."

In this holding the Honorable JOHN ERSKINE, the judge of this district, now retired, concurred, and in its support Justice BRADLEY cites many authorities, which he states have been "somewhat carefully consulted." In addition to these it will be instructive to refer to *Barton* v. *Keyes*, 1 Flip. 61; *Levi* v. *Insurance Co.*, 1 Fed. Rep. 206; *Walker* v. *Flint*, 7 Fed. Rep. 437; *Erwin* v. *Lowry*, 7 How. 172; *Griswold* v. *Railroad Co.*, 9 Fed. Rep. 797; *Covell* v. *Heyman*, 111 U. S. 176, 4 Sup. Ct. Rep. 355; *Heidritter* v. *Oil-Cloth Co.*, 112 U. S. 294, 5 Sup. Ct. Rep. 135.

It is insisted, however, that the superior court of the state had taken control of the property, because, upon an amendment to the bill therein pending, alleging that the officers were permitting a use of the corporation funds for private purposes, it had granted a restraining order enjoining the officers of the road from permitting the use of its funds for other than the purposes of the corporation. This, however, was nothing more than an order to restrain actual or threatened malfeasance of an officer or officers of the corporation, and was in no sense a seizure of the property itself. It indeed was a distinct recognition of the fact that the officers were yet in control. Otherwise, no injunction would have been issued against them.

The sole remaining objection to the order apparently necessary to enforce obedience to the decree of this court is that the circuit court of the United States for the northern district of Georgia has exclusive jurisdiction of the controversy presented by the bill, for the reason that the principal office of the company is in that district. In support of this proposition it is urged that in the case of *Banking Co.* v. *Seymour*, 53 Ga. 499, the supreme court of the state held that section 3406 of the Code of Georgia imperatively requires that the suit must be brought in the county where the principal office of the company is located, unless it is upon a contract made or to be performed in some other county. It is, however, true that the residence of a railroad corporation in Georgia is not restricted to the county in which its principal office is situated. In the case of *Davis* v. *Banking Co.*, 17 Ga. 323, it was held that such a corporation is a resident of the entire state, and an inhabitant of all the counties through which the road runs. This decision had under consideration the act of the general assembly now embodied in section 3406 of the Code. This allowed suits to be brought against railroad companies in any county in which a tort sued for was committed, or in which a contract declared on was to have been performed. This statute they held not to be in conflict with the provision of the state constitution, then of force, which declared that no person shall be sued elsewhere than in the county in which he resides. The doctrine of the case in 17 Ga. was reaffirmed in *Railway Co.* v. *Oaks*, 52 Ga. 410. In that case Judge McCAY, for the court, observed:

"We do not care to go over the elaborate argument of Judge BENNING in the case of *Davis* v. *Banking Co.*, 17 Ga. 336. There was a unanimous decision of this court upon the conformity of these laws to the constitution

requiring suits to be brought in the county of the residence of the defendants. The argument is full, exhaustive, and, in our judgment, conclusive. The position it takes has ever since been taken as the law of this state, and we approve of and adopt it."

The supreme court of the United States has declared in several cases that corporations are conclusively presumed to be residents of the states in which they are created. *Railroad Co.* v. *Koontz*, 104 U. S. 5; *Ex parte Schollenberger*, 96 U. S. 369; *Railroad Co.* v. *Letson*, 2 How. 558. In the case of *Locomotive Engine, etc., Co.* v. *Erie R. Co.*, 10 Blatchf. 307, it was held that railroad corporations are to be regarded as residents of every district of the state of their domicile in which they own property and exercise their functions. In the very recent case of *U. S.* v. *Railroad Co.*, 49 Fed. Rep. 297, Justice HARLAN, in the northern district of California, held that a railroad corporation doing business in a district becomes an inhabitant of the district. The learned justice points out the obvious fact that, if the construction of the statute insisted upon by the counsel for defendant is maintainable, it would effectually destroy the jurisdiction of these courts in all suits against joint defendants where a necessary party lives out of the district in which the suit is pending. It was, moreover, held, in the western district of Texas, by Judge MAXEY, in *Zambrino* v. *Railway Co.*, the suit is maintainable in a district where the road runs, although the principal office was located in another district. This is reported in 38 Fed. Rep. 449, and was followed in the case of *Riddle* v. *Railroad Co.*, 39 Fed. Rep. 290. It moreover appears to be true that where there is the proper diversity of citizenship which will give the circuit court of the United States general jurisdiction of the controversy, and where the federal statute confers upon the plaintiff a right to select the district within which the suit can be brought, the laws of the state regulating the venue as to suits in the state courts will not have the effect to restrict the territorial jurisdiction of the federal courts within limits more narrow than those prescribed by the acts of congress. *Cowles* v. *Mercer Co.*, 7 Wall. 118, 122; *Railway Co.* v. *Whitton's Adm'r*, 13 Wall. 271; *Insurance Co.* v. *Morse*, 20 Wall. 453; *Davis* v. *James*, 2 Fed. Rep. 618.

The bill before the court alleges that the Atlanta & Florida Railroad Company is a corporation under the laws of Georgia, and a citizen thereof, and that the plaintiffs are citizens of the other states named; that the railroad for which a receiver is asked is located in both districts of the state. One terminus of the completed portion is Atlanta, in the northern district, and the other Ft. Valley, in the southern district. The larger part of the completed portion, as well as of that projected and surveyed, but not completed, is in the southern district. The proper diversity of citizenship to give the court jurisdiction is apparent.

The act of congress, prescribing the place where a person may be sued, is not one affecting the general jurisdiction of the courts. It is rather in the nature of a personal exemption in favor of the defendant, and it is one which he may waive. *Ex parte Schollenberger*, 96 U. S. 369. Assuming, for the present, that the defendant corporation will waive noth-

ing, it becomes important to determine, by an analysis of the line of statutes upon this subject, whether jurisdiction has been affirmatively conferred upon this court. The eleventh section of the judiciary act of 1789, following clauses which conferred jurisdiction on the circuit courts in all suits of a civil nature at common law and in equity, on account of diversity of citizenship, federal questions, alienage, etc., provided as follows:

"But no person shall be arrested in one district for trial in another in any civil action before a circuit or district court. And no civil suit shall be brought before either of said courts against the inhabitants of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." See section 730, Rev. St.

The next provision upon this subject will be found in the act of May 4, 1858, (11 St. at Large, p. 272.) That act contained but two sections, both of which relate to the *locus* of suits where there are more than one district in the same state. The first of these sections provided that, where there is more than one district in a state, the suit, if not of a local nature, and if against a single defendant, must be brought in the district where the defendant resides; but, if there are two or more defendants residing in different districts of the same state, the plaintiff may sue in either district. *Vide* section 740, Rev. St. And, in suits of a local nature, where the defendant resides in a district in the same state different from that in which the suit is brought, the plaintiff may have original process against such defendant directed to the marshal of the district in which he resides. *Vide* section 741, Rev. St. The second section provided:

"That, in all cases of a local nature, at law or in equity, where the land or other subject-matter of a fixed character lies partly in one district and partly in another within the same state, the plaintiff may bring his action or suit in the circuit or district court of either district, and the court in which it is brought shall have jurisdiction to hear and decide it, and to cause mesne or final process to be issued and executed as fully as if the said subject-matter were wholly within the district for which said court is constituted." *Vide* section 742, Rev. St.

This, as we shall presently see, is still the law, and expressly controls the question now under consideration. The several provisions above enumerated have been embodied in sections 739, 740, 741, and 742 of the Revised Statutes, all manifestly relating to cognate topics, and designed to confer jurisdiction in the special cases to which they refer.

By the act of congress of June 1, 1872, (17 St. at Large, p. 198,) it was further provided that, in any equity suit to enforce any legal or equitable lien or claim against property in a district in which the defendant is not an inhabitant, or is not found, or does not voluntarily appear, it shall be lawful to serve the defendant by personal service on him, wherever he may be, or to make service by publication. In case he does not appear, the effect of the judgment is restricted to the property in the district. These provisions are embodied in section 738 of the Revised Statutes. This statute had the effect to extend the pro-

visions of that portion of the act of May 4, 1858, which is embodied in section 741 of the Revised Statutes, to the case of a defendant residing out of the state, but who was interested in property of a local nature, within the jurisdiction, which the plaintiff was seeking to subject to a legal or equitable lien. It did not enlarge or otherwise affect the general jurisdiction of the court in the "suit of a local nature," for which section 741 of the Revised Statutes provided, but it merely furnished the procedure by means of which the non-resident could be legally served and made a party to the judgment, so far as it affected the property actually within the operation of a legal or equitable lien or claim which the court had otherwise jurisdiction to enforce against it. Before the enactment of this statute we can well understand how, in many instances, the court was unable to afford relief to which suitors were obviously entitled, where the non-resident defendant owning property in the district could not be served and would not voluntarily appear. *Vide Brightford* v. *Luddington*, 12 Blatchf. 237. The provisions of section 738 of the Revised Statutes were afterwards enlarged by section 8 of the act of March 3, 1875, which is still of force.

To summarize the result of our examination, it appears that, when the revision of the statutes had been made, the following provisions relative to the *locus* of suits in the circuit court were in full force:

*First.* The provision in the eleventh section of the judiciary act, that suits of a civil nature should be brought in the district of which the defendant was an inhabitant, or in which he might be found. This has been embodied in section 739, Rev. St.

*Second.* That suits not of a local nature, where there are joint defendants residing in different districts of the same state, might be brought in either district. This part of the act of 1858 is expressed in section 740, Rev. St.

*Third.* That in suits of a local nature, where the defendant resides in a district in the same state different from that district in which the suit is brought, the plaintiff may have original process sent into the other district, and served upon the defendant there. This clause of the act of 1858 was embodied in section 741, Rev. St.

*Fourth.* That suits of a local nature, where the land or other subject-matter of a fixed character lies partly in one district and partly in another within the same state, may be brought in either district, and the court in which they are brought shall have plenary jurisdiction to hear and decide them, to issue and control the process, as if the subject-matter were wholly within the district for which such court is constituted. The compilers embrace this clause in section 742, Rev. St.

*Fifth.* The provision for procedure to effect service upon defendants in suits of a local nature, where the defendants are out of the territorial jurisdiction of the court, so that the judgment can be operative upon the property within such jurisdiction. This provision was made by act of 1872, and is embodied in section 738, Rev. St.

It is contended, however, by counsel who resist this motion, that all these special provisions relating to suits brought in states where there

are more than one federal judicial district were superseded by the provisions of section 1 of the act of March 3, 1875. This, they claim, was intended to cover the entire subject, and to indicate the locality in which civil suits in the circuit and district courts might be brought. They rely on the language—

"No civil suit shall be brought before either of said courts against any person, by any original process or procedure, in any other district than that whereof he is an inhabitant, or in which he is found at the time of serving such process."

They insist, moreover, that the amendatory acts of March 3, 1887, and August 13, 1888, had the effect to repeal these provisions above enumerated by implication. Let us consider these propositions in the order of their statement. An analysis of the first section of the act of March 3, 1875, makes it apparent that it is a substitute for the eleventh section of the judiciary act of 1789, the provisions of which, so far as they confer general jurisdiction on the circuit court, were embodied in subdivisions 1, 2, and 3 of section 629 of the Revised Statutes, and, so far as they prescribed the appropriate district in which the suit might be brought, were embodied in section 739 of the Revised Statutes. *Ames* v. *Hager*, 36 Fed. Rep. 129; *U. S.* v. *Moony*, 116 U. S. 104, 6 Sup. Ct. Rep. 304. That act contained no provision covering the special cases provided for in the act of May 4, 1858, which, we have seen, is embodied in sections 741, 742, Rev. St., which relate to joint defendants in different districts of the same state, and to suits of a local nature affecting property within the jurisdiction. It was not the intention of congress, by the act of March 3, 1875, to do away with all the salutary statutes conferring special jurisdiction upon the circuit and district courts. "The intention of the law-maker constitutes the law. A thing may be within the letter of a statute and not within its meaning, or within its meaning and not within its letter. In cases admitting of doubt, the intention of the law-maker is to be sought in all the context of the section, statutes, or series of statutes, *in pari materia.*" This language is used by Mr. Justice SWAYNE, for the court, in the case of *Atkins* v. *Disintegrating Co.*, 18 Wall. 272; and the learned justice applied the doctrine by the announcement that, although an admiralty case is a "civil suit," the prohibition in the eleventh section of the judiciary act had no reference to it. A decision more directly in point is the case of *U. S.* v. *Mooney*, 116 U. S. 104, 6 Sup. Ct. Rep. 304, where Mr. Justice WOODS, in delivering the opinion of the court, used the language following:

"How, then, can the substantial re-enactment of section 11 [of the judiciary act] by the act of March 3, 1875, with modifications immaterial, as far as the question in hand is concerned, have an effect which the original section did not? * * * To sustain the contention of the plaintiffs, we must hold that the purpose of section 1 of act of March 3, 1875, was to repeal by implication, and to supersede, all laws conferring jurisdiction on the circuit courts, and, of itself, to cover and regulate the whole subject. But this construction would lead to consequences which it is clear congress did not contemplate. The act of 1875, it is clear, was not intended to interfere with the

prior statutes conferring jurisdiction upon the circuit or district courts in special cases and over particular subjects. Its purpose was to give to the circuit courts a jurisdiction which the federal courts did not then possess, by enlarging their jurisdiction in suits of a civil nature, in common law or in equity, and not to take away from the circuit or district courts jurisdiction conferred by prior statutes."

That the scope of the first section of the act of 1875 was to be limited to the general jurisdiction of the courts, conferred by the eleventh section of the judiciary act, was distinctly held by Circuit Judge SAWYER in *Ames* v. *Hager*, 36 Fed. Rep. 129; by this court in *U. S.* v. *Shaw*, 39 Fed. Rep. 433; and by Judge BARR, in Kentucky, in *U. S.* v. *River Mills*, 45 Fed. Rep. 273. It follows, therefore, that the special cases for which provision was made by the act of May 4, 1858, embodied in sections 740, 741, and 742 of the Revised Statutes, relating to the locality of suits in the states containing more than one district, were not within the contemplation of congress when that act was enacted, and are not repealed by it. The language of that act, so far as it requires suits to be brought in the district of which the defendant is an inhabitant, or in which he is found, is not at all different from the eleventh section of the judiciary act. This was co-existent with the act of 1858, and, as we have seen, was embodied in section 739 of the Revised Statutes by the compilers, as an independent provision, not at all in conflict with the legislation conferring jurisdiction, and making it effective in the special cases indicated in sections 740, 741, and 742 of the Revised Statutes; all of which were re-enacted by the adoption of the Revision simul - neously with it. The provisions of the act of March 3, 1887, and of August 13, 1888, amendatory of the act of 1875, in respect to the questions under discussion, are in no particulars different from the latter act. These recent statutes, therefore, are likewise within the range of the authority of *U. S.* v. *Mooney, supra,* and, in the opinion of the court, clearly did not repeal sections 740, 741, and 742 of the Revised Statutes. It is moreover true that, if we trace the same provision through the numerous acts of congress passed since the act of 1875, and since the act of 1888, whereby other divisions of judicial districts are created in the several states, it will be observed that suits of a local nature are always excepted from the provisions changing the locality of suits, or requiring subsequent suits against its residents to be brought within the new divisions.

It is insisted, however, by the learned counsel for the plaintiff that this is not a suit of a local nature, within the meaning of the act of congress. To this proposition the court cannot assent. We are controlled by the averments of the bill. It alleges that the defendant corporation is insolvent; that the plaintiffs are creditors; that the only means by which they can obtain payment of their debts is by the seizure of the railroad itself,—the *res,*—which is the subject-matter of this litigation. This railroad is mainly real estate, and is an entirety. A large part of it is actually located within this district. In so far as the assets are personal, they are likewise largely located here. It is therefore a suit

of a local nature, and the fact that a portion of this entirety is in the northern district of Georgia does not affect the local character of the suit. The statute of the state Code (section 3149a) gives to the plaintiffs an equitable right to subject this property to the payment of their debts, which right, it has been repeatedly held, a court of equity of the United States can enforce. To do this, it is necessary for a receiver of the court to take actual possession of the *res*, to control and administer it, and to do this in the locality in which it is situated. The character of the suit is not doubtful.

An attentive examination of all the enactments hereinbefore referred to will, we think, lead to the inevitable conclusion that it was not the purpose of congress, by the acts of 1875, 1887, or 1888, to repeal the salutary provisions which enabled the circuit court to afford relief in any district where the suit is of a local nature, or where the property sought to be reached is an entirety, and is partly within the district and partly within another district of the same state, or relief as against the property itself, where it is within the district, and is subject to a legal or equitable lien or claim, even though the defendant be a resident of another state. It follows, therefore, that the jurisdiction of the circuit court in this, the southern district of Georgia, over the parties and the subject-matter of this litigation, is strongly founded upon the fact that the property to be dealt with is of a fixed character, and is located in both districts of the state, and as well upon the general doctrine that a railroad corporation is a resident of the state of its creation, and of each district of the state through which it runs. The case is very unlike one where a railroad is operated in two districts situated in different states, in which ancillary bills should be filed, and orders extending the appointment of a receiver are necessary; but in this case, under section 742 of the Revised Statutes, the jurisdiction of this court is plenary over the entire property in both districts of this state.

In several cases, notably in the case of *Tefft* v. *Sternberg*, reported in 40 Fed. Rep. 2, we have attempted very carefully to indicate that in no case would we encroach upon the proper jurisdiction of the state court relative to the substance of litigation. There the substance of the litigation was the goods which the sheriff had seized. Here the substance of the litigation is the railroad itself. There was a balance, which a receiver of this court might have administered; but, with a desire to avoid anything like conflict with the state court, we declined to permit the receiver here to receive even that balance to which the creditors, whose claims were in the hand of the sheriff, apparently had no right whatever. In a recent case (*Candler* v. *Balkcom*) a receiver had been appointed by Judge CLARKE a short time prior to a similar appointment of this court, and that receiver, by telegraphic instructions of his appointment, had taken possession of the property a few minutes before the receiver of this court attempted to take possession. Therein, in a case parallel to this, we declined to interfere with the state court, and the bill was dismissed. There are, however, cases occurring where the court feels obliged, and will hereafter feel obliged, to support its author-

ity and the action of its officers in carrying out its judgments, and this is one of those cases.

The court has attentively considered the arguments of counsel for respondent, but is unable to reach a conclusion differing from that announced upon the hearing on the application for the rule *nisi;* nor is the answer for defendant in any respect sufficient to exonerate him from the legal consequences of the defiant attitude which he has taken towards the proper order of this court in a matter of which it had both prior and plenary jurisdiction. While the announcement is made with very great reluctance, the duty devolves upon the court to make the rule absolute, and cause the attachment to issue against the defendant, directing the marshal to arrest and commit him for his contemptuous disregard of the decree of the court. If there is further disobedience on the part of any person whatsoever, the court will grant a writ of assistance sought, directing the marshal to take actual possession of the property of the defendant corporation. It will be so ordered.