## Case No. 2,212.

BURT et al. v. KEYES et al.

[1 Flip. 61;[1] 3 West. Law Month. 290.]

Circuit Court, N. D. Ohio. Nov. Term, 1861.

RELATIONS OF STATE LAWS TO UNITED STATES COURTS SITTING AS COURTS OF LAW AND EQUITY—JURISDICTION—JURISDICTION OF THE CIRCUIT COURT OF THE UNITED STATES TO DECLARE ASSIGNMENT FRAUDULENT, NOTWITHSTANDING SPECIAL PROVISIONS OF STATE STATUTE — FEDERAL COURT MAY DECLARE PRIORITY OF SATISFACTION, THOUGH STATE STATUTE PROVIDE OTHERWISE—AS BETWEEN A COURT OF UNITED STATES AND STATE COURT — WHICH HAS JURISDICTION, AND WHEN — VIGILANT CREDITOR — RULE OF PROPERTY.

1. The state laws constitute a rule of decision to the courts of the United States when sitting as courts of law in civil matters within a particular state, but this rule does not apply to a circuit court of the United States when sitting as a court of chancery. It is governed by the general principles of equity in the exercise of its equitable powers.

[Cited in Mann v. Appel. 31 Fed. 383.]

[See note at end of case.]

2. The circuit court of the United States has jurisdiction to declare void a fraudulent assignment, notwithstanding the special provisions of a state statute, as to setting aside assignments made by a debtor in contemplation of insolvency, and it can direct the application of the fund assigned.

[Cited in Neal v. Foster, 36 Fed. 42.]

[See note at end of case.]

3. The Ohio statute provides that a fraudulent assignment so made shall enure to the benefit of all the creditors of the assignor in proportion to the amount of their respective claims, prescribing a specific mode of making distribution through the agency of an assignee appointed by the probate judge. Notwithstanding the circuit court of the United States has jurisdiction in equity, and in that court a particular creditor,

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

who sues for himself alone, will entitle himself to a prior equity to the payment of his entire debt, and the court will direct the application of the residue of the fund.

[Cited in Fidelity Trust Co. v. Gill Car Co., 25 Fed. 745.]

4. Where a question of jurisdiction arises as between a court of the United States and a state court, the court which first acquires possession of the fund, or subject of the action or jurisdiction over the matter by process against the person, has exclusive jurisdiction.

[Cited in East Tennessee, V. & G. R. Co. v. Atlanta & F. R. Co., 49 Fed. 611.]

5. The vigilant creditor acquires, by pursuing his claim, a preferable equity, which attaches and becomes a specific lien by the filing of his bill.

6. Whenever the state court acquires possession and control of the insolvent debtor's property, it has the unquestioned power to dispose of it and give a good title. To this extent the state law is a rule of property.

In equity. Henry Keyes was a partner in the firm of Keyes, White & Co. His son, Martin Keyes, was also a member of that firm. Henry Keyes, being a man of wealth, loaned his name in order to obtain credit for the firm. The other members had but little financial standing. On the 8th of February, 1858, their liabilities were $54,800, when the firm failed. On the 28th of February, 1858, Henry Keyes conveyed to his two sons, Henry and Elias H. Keyes, all his unencumbered real estate, and gave them ten years in which to pay for it. He well knew of the embarrassed condition of the firm, for he had prior to that time obtained an extension for as much as $20,000 of the firm debts and had secured the same; besides had joined in an assignment to a trustee of the firm assets to secure debts. The complainants here, Burt, Wilcox and Barton, had obtained judgments in the months of August, 1858, and April, 1859, and filed this bill on the 11th day of May, 1859, in the circuit court of the United States, to set aside the conveyance made by Henry Keyes to his two sons, alleging that such conveyance was made to hinder, delay and defraud his creditors. [Decree for complainants.]

The act of the Ohio legislature, regulating assignments, of April 6, 1859, on which some of the pleadings are based, is fully explained in the opinion. This is especially so with regard to the 17th section of that act.

Keith & Coon, for plaintiff
J. Q. Farmer, for defendant.

WILLSON, District Judge. The two important inquiries involved in the case are: 1st—Was the sale made by Henry Keyes to his two sons, on the 28th of February, 1858, a fraudulent sale as to his creditors, and 2nd—If the sale was fraudulent, then have these complainants any prior equities over the other creditors of Henry Keyes by virtue of this proceeding in chancery, or do his creditors all stand upon equal footing under the operation of the 17th section of the act of the Ohio legislature, regulating assignments, passed April 6, 1859. 56 St. p. 225.

Fraud is not to be considered as a simple fact, but a conclusion to be drawn from all the circumstances of the case. It may be inferred from the nature of the contract itself, or from the condition or circumstances of the parties. The general principle is well settled, that equity will give relief against presumptive frauds, and therein will go further than courts of law, where fraud must be proved and not presumed. It is true that some eminent judges have said that a deed cannot be fraudulent unless it be fraudulent both in law and equity. But it was the clear doctrine of Lord Hardwicke, and of the English court of chancery up to his time, that there are many instances of fraud that would in equity affect instruments in writing concerning lands, of which the law could not take notice.

In accordance with these principles, a great number and variety of modern cases have been decided in England and in this country, and relief afforded in equity, where, from the nature of the transaction and situation of the parties, fraud might be presumed.

What then, were the circumstances attending the sale of the land in question, on the 28th of February, 1858, and what was the relation of the parties in that transaction to one another and to the creditors of Henry Keyes?

From the bill, answers, and the mass of testimony produced at the hearing of the cause, some leading facts stand out as prominent, as they are in themselves important.

It appears that for some time previous to February, 1858, Henry Keyes was a partner in the mercantile firm of Keyes, White & Co., doing business at Beloit, in the state of Wisconsin. The individuals comprising that firm were Ira White, the defendant Keyes, and his son, Martin Keyes. As between the partners themselves, Henry Keyes had no pecuniary interest in the profits of the concern, but entered into the firm to give it credit and to advance the interest of his son Martin. From the acknowledged wealth of Henry Keyes, the firm easily obtained credit for goods purchased to a large amount, so that on the 8th of February, 1858, its outstanding liabilities had accumulated to the sum of $54,800. On that day the concern failed and made an assignment of the company's assets at Beloit, to Edwin R. Wadsworth, for the benefit of the creditors. The assignment was made, and the proper transfer of the assets executed by all the partners, including Henry Keyes. It is not a little singular, that the testimony of Ira White, the book-keeper of Keyes, White & Co., and that of Wadsworth, the assignee, though full in other respects, does not disclose the character or amount of the assets that passed into the hands of the assignee.

It was within the next twenty days after the assignment of the company's property, that Henry Keyes conveyed all his unencumbered real estate in Ohio, to his two sons, Elias and Henry P. Keyes, and the sale was made upon an extended credit, running through a period of ten years.

Henry Keyes, in his answer, avers, that in consequence of his impaired eye-sight, and the increasing infirmities of old age, he had for a long time previous contemplated some arrangement with his sons, by which he should be relieved from the cares incident to the management of his property. And he says the conveyance made by him on the 28th of February, was done in good faith, and without reference to any pecuniary embarassment of his own, or that of Keyes, White & Co. But we are unable to reconcile this interpretation of the purpose of the conveyance with the necessary consequences of the transaction upon the rights and interests of creditors.

It clearly had the effect of hindering and delaying the creditors of Keyes, White & Co. in the collection of their debts from the only responsible member of the firm, and in making the conveyance, Henry Keyes must be considered as having contemplated the legitimate consequences of his own act in that regard. So far as the rights of third persons are concerned, it is an unwarrantable assumption to claim that the chief and responsible partner knows nothing of the affairs of the partnership. He had already been called upon to adjust its debts, and had in fact pledged, by way of mortgage, his private property for the payment of $20,000 of the liabilities of the firm.

This pecuniary embarassment of the firm of Keyes, White & Co., this extension of the payment of $20,000 of the liabilities which had become due, and security given therefor, and also the assignment of the assets of the firm to a trustee for the benefit of creditors, were facts known to all the parties to the conveyance (made on the 28th of February, 1858), when the deeds were executed.

There is some testimony tending to show that no change of possession of this property was had after the alleged sale, and that Henry Keyes has since that time, had the sole management and control over it.

But from a just view of the undisputed facts in the case, the fraudulent sale is sufficiently apparent, without any consideration of the fact of the vendor's retaining possession or control of the land. It is perfectly clear from all the circumstances attending the bargain and sale, and from the intimate family relation of the parties to the transaction, that the purpose of the pretended sale, was, either to save the property of Henry Keyes from the sacrifice of a forced sale upon attachment or execution, or to put his property in such a condition as to enable him to coerce a compromise with his creditors on terms favorable to himself. In either view,

the conveyance must be declared fraudulent and void.

We come to this conclusion with less reluctance, since it appears that after the commencement of this suit, the parties to the deed have themselves abandoned the sale, and cancelled the securities given for the purchase price.

The next inquiry is: Have these complainants, by this proceeding in equity, obtained rights in or liens upon the property in question, to the exclusion of the other general creditors of Henry Keyes? Or do all of his creditors stand upon equal footing under the operation of the act of the Ohio legislature of April 6, 1859?

The 17th section of the state law provides, that "all transfers, conveyances or assignments made with the intent to hinder, delay or defraud creditors, shall inure to the equal benefit of all creditors in proportion to the amount of their respective claims, and the probate judge, after any such transfers, conveyance or assignment shall have been declared by a court of competent jurisdiction, to have been made with the intent aforesaid, on the application of any creditor, shall appoint an assignee according to the provisions of this act, who, upon being duly qualified, shall proceed by due course of law to recover possession of all property so transferred, conveyed or assigned, and to administer the same as in other cases of assignments to trustees for the benefit of creditors."

It was insisted by the complainants' counsel, in the argument, that this court is not to be governed by the state statute. First, because this is a suit in equity, and therefore not within the provisions of the 34th section of the judiciary act of 1789; and second, that it is impossible for this court to carry out the requirements of the state law, and hence its recognition (as binding authority) would oust the circuit court of that jurisdiction of suits in equity which rightfully belongs to it.

The legal principle involved in this branch of the case, is of great practical importance to creditors pursuing remedies against fraudulent debtors in Ohio, and therefore properly demands a careful consideration.

The question here is not a question of the jurisdiction of this court over the subject matter of the suit. It is admitted on both sides, that by this proceeding in equity the circuit court of the United States for the northern district of Ohio, sitting as a court of chancery, has acquired jurisdiction over the land alleged to have been fraudulently conveyed, and that it has ample power to declare the sale fraudulent and void. Hence those adjudged cases, by which questions of jurisdiction merely have been determined, have no application as authority in the case.

The case of Williams v. Benedict, 8 How. [49 U. S.] 107, was where, by a statute of Mississippi, it was provided, that if it ap-

peared to the orphans' court of the state, that the estate of a deceased person was insolvent, it was made the duty of that court to direct the property to be sold by the executor or administrator, and to appoint commissioners to audit the claims of creditors, and to distribute the proceeds of the property among the creditors in proportion to the amount due to them respectively. That case was taken to the supreme court of the United States (on appeal) by the administrator of an estate which had been declared insolvent by the orphans' court. The appellee had obtained judgment against the administrator in the United States court for the northern district of Mississippi before the adjudication of insolvency by the orphans' court, and had issued execution and levied on property upon which the judgment was a lien in case the estate was solvent.

Upon a bill, filed by the administrator to stay proceedings on this execution, the judgment creditor insisted that the estate was not insolvent, but had been squandered by the administrator, and that the proceedings in the orphans' court, under the local law, were no bar to his recovery in a court of the United States, and the court below dismissed the bill for that reason. The supreme court, however, reversed the decree, and in doing so, put its decision on the ground, that the jurisdiction of the orphans' court had attached to the assets, and they could not be seized by process of a court of another jurisdiction. So, too, in Wiswall v. Sampson, 14 How. [55 U. S.] 52, it was held, that where certain lands were in the possession and control of a receiver, appointed by the court of chancery of Alabama, in a case pending before it, they could not be sold by a marshal upon execution issued out of the circuit court of the United States, although the judgment on which process issued, was a lien upon lands, and the execution was levied before the receiver obtained actual possession of the property.

These decisions of the supreme court, and others of the same import, are based upon the familiar doctrine declared by Lord Ellenborough in Payne v. Drewe, 4 East, 523, that where there are several authorities equally competent to bind the specific property of a party, such property shall be considered as effectually, and for all purposes bound by, the authority which first actually attaches upon it, or obtains control over it, by means of process against the proper persons.

The bill, in this case, was filed on the 11th day of May, 1859. The judgments in favor of the complainants, (on which this chancery proceeding is predicated) were recovered in August, 1858, and April, 1859, during all which time the legal title to the land in question, was in Henry P. and Elias H. Keyes, in virtue of the fraudulent conveyance made on the 28th of February, 1858.

At the time of filing the bill, no court of competent jurisdiction had declared the conveyance fraudulent. The rights of the complainants in the land, are therefore determined according to the condition of the parties and of the conveyance at the time the bill was filed.

The sale and conveyance being now declared fraudulent and void, it becomes necessary to determine the distribution of the fund to accrue from a resale of the land under an order of court. And hence the question arises: Is the state law to be regarded as the rule of decision? Or, in other words, does the local law furnish a rule of property, or does it relate merely to the remedy incident to proceedings under the statute in the state tribunals?

By the 34th section of the judiciary act of September 24, 1789 [1 Stat. 92] it is provided that the "laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials of common law, in the courts of the United States, in cases where they apply."

Were this the trial of a case of common law, there could be no question of the applicability of the statute of the state, as furnishing a rule of decision for this court. But the circuit court of the United States, sitting in chancery, is governed by the principles and usages of courts of equity as peculiar to themselves, and as contradistinguished from courts of common law. "For," as was said by Judge Story, 2 Sumn. 405 [Gordon v. Hobart, Case No. 5,609], "the equity jurisdiction of this court is wholly independent of the local laws of any state, and is the same in its nature and extent in all the states; that is, it is the same in its nature and extent, as the equity jurisdiction of England, from which ours is derived, and is governed by the same principles."

The same doctrine was asserted and maintained by Mr. Justice Washington, in the case of McFarlane v. Griffith [Case No. 8,790]. That was a proceeding in chancery, by which the complainant sought relief against his bond, given for the purchase of land. The suit was against the assignee of the bond, who was a purchaser for a valuable consideration, and without notice of any equities between the original parties. The statute of Pennsylvania provided, that "the assignee of a bond or mortgage for a valuable consideration, and without notice, should stand in no better situation than the assignor, and should be exposed and subject to every legal and equitable defense that could be asserted against him." This statute was intended to abrogate the well-settled principle, universally recognized in courts of equity, viz.: That against a bona fide purchase for a valuable consideration paid, and without notice of those circumstances which form the basis of the plaintiff's equity, the chancellor will take no step and grant no relief whatever.

The court in that case held, that the state

law had no application as a rule of decision for the federal courts sitting in chancery, and the cause was decided without regard to the statute, in accordance with the principles recognized and acted upon in courts of equity. So in Gaines v. Relf, 15 Pet. [40 U. S.] 9, it is declared, that the federal courts, having equity powers, are bound to proceed in equity causes according to the principles, rules and usages, which belong to the courts of chancery, as contradistinguished from the courts of common law.

These decisions have their foundation in the principle incorporated into the act of congress of May 8, 1792 [1 Stat. 276], which requires "the mode of proceedings in suits in equity to be in accordance with the principles and usages of courts of equity;" and the supreme court of the United States, in Suydam v. Broadnax, 14 Pet. [39 U. S.] 67, have gone further and declared, that the eleventh section of the act to establish the judicial courts of the United States, carries out the constitutional right of a citizen of one state to sue a citizen of another state in the circuit court of the United States. "It was certainly intended to give the suitors having a right to sue in the circuit court remedies co-extensive with those rights." And (the court say) these remedies would not be so, if any proceeding under an act of a state legislature, to which a plaintiff was not a party, exempting a person of such state from suit, could be pleaded to abate a suit in the circuit court. The same doctrine is again maintained by the supreme court, in the late case of Green's Adm'x v. Creighton, 23 How. [64 U. S.] 90.

But it is said that the Ohio statute of April 6, 1859, operates as a rule of property, and for that reason furnishes a rule of decision for this court in causes of equity as well as in cases at common law. In some respects and in certain contingencies, this claim of counsel is well founded. In a case of fraudulent conveyance (contemplated by the statute) if the state courts obtain jurisdiction of the subject matter of the transaction, that jurisdiction is doubtless complete and effectual for all purposes, as well in determining the rights of creditors as in carrying out the remedies provided for in the state law, where that law has application. And whereever that jurisdiction is properly obtained by the state courts, and the assignee appointed by the probate judge acquires possession and control of the fraudulent debtor's property, he has unquestioned authority to dispose of it and give a title that will be good and sufficient everywhere. To this extent the state law may be regarded as furnishing a rule of property. But further than this it has no efficiency, as a rule of decision for this court in the exercise of its chancery powers.

By the well-settled principles and long established usages of courts of equity, the doctrine is plain, that "the vigilant creditor, pursuing his claim, acquires a preferable equity, which attaches and becomes a specific lien by the filing of his bill." And no court in the Union has maintained this doctrine more firmly than the supreme court of Ohio. 6 Ohio, 156; 7 Ohio, 21; 13 Ohio, 198.

This preferable equity of the vigilant creditor is a right as well defined and as exclusive of the claims of other creditors as is the right secured by a judgment lien upon the debtor's property.

The only remaining question in the case is, shall the judgment creditors of Henry Keyes, who are made defendants in this suit, be admitted with the complainants to an equal participation in the fund?

It was competent for the complainants to commence and prosecute this suit for the joint benefit of themselves, and all and any portion of the creditors of Henry Keyes. If it was their purpose to seek relief for creditors other than for themselves, that intention should have been manifested by suitable averments in the bill. It is a right of an antagonistic defendant to have all the material facts on which relief is sought specifically set forth in the bill, that such facts may be admitted or controverted by answer and testimony, and no proofs in the cause will be admitted unless secundum allegata.

The bill does not contain any averment that the suit is brought or is to be prosecuted for the benefit of other creditors. Lee and other judgment creditors of Henry Keyes are made defendants, and the bill avers their interests and rights to be subject and subsequent to the rights and equities of the complainants. The answers of the defendants, who are judgment creditors, cannot supply this defect, and thereby make an issue not tendered by the bill.

We are, therefore, of opinion that these defendants have acquired no prior equities over the other general creditors of Henry Keyes by this suit. Hence, the fund to accrue from a sale of the land in question must be apportioned and applied as follows: 1st—In payment of the taxable costs of this suit. 2d—In payment of the debt described in the bill as due the complainants. 3d—The residue, if any, to be apportioned and paid to all the other creditors of Henry Keyes, in proportion to the amount of their respective claims, according to the requirements of the Ohio statute of April 6, 1859.

[NOTE. State laws do not constitute a rule of decision to United States courts sitting as courts of equity. Ex parte Biddle, Case No. 1,391; Pennsylvania v. Wheeling & Belmont Bridge Co., 13 How. (54 U. S.) 563; Davis v. James, 2 Fed. 618; Keith v. Town of Rockingham, Id. 834; Lorman v. Clark, Case No. 8,516; Strettell v. Ballou, 9 Fed. 256; Robinson v. Campbell, 3 Wheat. (16 U. S.) 212; Neves v. Scott, 13 How. (54 U. S.) 268; Fitch v. Creighton, 24 How. (65 U. S.) 159; U. S. v. Howland, 4 Wheat. (17 U. S.) 108; Noonan v. Lee, 2 Black (67 U. S.) 499; Gordon v. Hobart, Case No. 5,609; U. S. v. Parrott, Id. 15,999; Flagg v. Mann, Id. 4,847; Mayer v. Foulkrod, Id. 9,341; Fletcher v. Morey, Id. 4,864; McFarlane v. Griffith, Id. 8,790; Lamson v. Mix, Id. 8,034; Taylor v. Life Ass'n, 13 Fed. 493; But-

ler v. Douglass, 3 Fed. 612. That the court can act notwithstanding provisions in a state statute as to the remedies, see Railway Co. v. Whitton, 13 Wall. (80 U. S.) 270; Payne v. Hook, 7 Wall. (74 U. S.) 425; Phelps v. O'Brien Co., Case No. 11,078; Wheeler v. Bates, Id. 17,492; Mercer Co. v. Cowles, 7 Wall. (74 U. S.) 118; Smith v. Railroad Co., 99 U. S. 398; Keary v. Farmers' & Merchants' Bank, 16 Pet. (41 U. S.) 89; Cunningham v. County of Ralls, 1 Fed. 453; Pulliam v. Pulliam, 10 Fed. 27. As to the jurisdiction of federal courts. where the state court has concurrent jurisdiction, see Chapman v. Borer, 1 Fed. 274; Tobey v. County of Bristol, Case No. 14,065; Pratt v. Northam, Id. 11,376; Allen v. Allen, Id. 211; Ex parte Jenkins, Id. 7,259; Griswold v. Central Vt. R. Co., 9 Fed. 797; Parkes v. Aldridge, 8 Fed. 220; Allen v. Allen, supra; Board of Missions v. McMaster, Case No. 1,586; Buck v. Piedmont & Arlington Life Ins. Co., 4 Fed. 851; Shoemaker v. French, Case No. 12,800; Haines v. Carpenter, Id. 5,905; Fiske v. Gould, 12 Fed. 373; Mercantile Trust Co. v. Lamoille Val. R. Co., Case No. 9,432; Bruce v. Manchester & K. R. R., 19 Fed. 342; Owens v. Ohio Cent. R. Co., 20 Fed. 10; Logan v. Greenlaw, 12 Fed. 18; Andrews v. Smith, 5 Fed. 833; Buck v. Colbath, 3 Wall. (70 U. S.) 342; Union Mut. Life Ins. Co. v. University of Chicago, 6 Fed. 443; Levi v. Columbia Life Ins. Co., 1 Fed. 206; Ex parte Robinson, Case No. 11,935. The court first obtaining jurisdiction should retain it. Smith v. McIver, 9 Wheat. (22 U. S.) 532; Parsons v. Lyman, Case No. 10,780; Shelby v. Bacon, 10 How. (51 U. S.) 56; Mallett v. Dexter, Case No. 8,988; Ober v. Gallagher, 93 U. S. 199; Ward v. Todd, 103 U. S. 327; Crane v. McCoy, Case No. 3,354; U. S. v. Wells, Id. 16,665; Ex parte Hall, Id. 5,919; In re Boston, H. & E. R. Co., Id. 1,678; Ex parte Turner, Id. 14,246; The Circassian, Id. 2,721; The Celestine, Id. 2,541; Buck v. Colbath, supra; Gaylord v. Ft. Wayne, Muncie, etc., R. Co., Id. 5,284; Union Trust Co. v. Rockford, R. I. etc., R. Co., Id. 14,401.]