## BRACEWELL v. SOUTHERN RAILWAY COMPANY.

1. Where a railroad company incorporated in another State operates a line of railroad in this State, and a cause of action arises by reason of a tort here committed, section 2334 of the Civil Code, providing that "all railroad companies shall be sued in the county in which the cause of action originated," etc., applies to a suit brought on account of such a tort.

2. As to the point decided in the previous headnote this court declines to reverse the decisions in the cases of *Mitchell* v. *Southern Railway Company*, 118 *Ga.* 845 (45 S. E. 703), *Hazlehurst* v. *Seaboard Air-Line*

*Railway*, 118 *Ga*. 858 (45 S. E. 703), and *Coakley* v. *Southern Railway Company*, 120 *Ga*. 960 (48 S. E. 372).

MAY 11, 1910.

Question of law; from Court of Appeals.

*Guerry, Hall & Roberts* and *H. L. Grice*, for plaintiff.

*Harris & Harris*, for defendant.

LUMPKIN, J.  The Court of Appeals certified to this court the following question: "Does section 2334 of the Civil Code relate to suits against non-resident or foreign corporations? (In connection herewith it is to be noted that counsel for plaintiff in error ask leave to review and question the correctness of *Mitchell* v. *Southern Ry. Co.*, 118 *Ga*. 845; *Coakley* v. *Southern Ry. Co.*, 120 *Ga*. 960; *Hazlehurst* v. *Seaboard Air-Line Ry.*, 118 *Ga*. 858.)"

In *Mitchell* v. *Southern Ry. Co.*, 118 *Ga*. 845 (45 S. E. 703), it was held that "Civil Code, § 2334, fixing the venue of suits against railroad companies, applies to foreign as well as domestic corporations." In *Hazlehurst* v. *Seaboard Air-Line Ry.*, 118 *Ga*. 858 (45 S. E. 703), it was held that "For any cause of action arising in this State foreign railroad companies are subject to suit by attachment or in personam, but the trial in every such case must be in the county designated by the Civil Code, § 2334." In *Coakley* v. *Southern Ry. Co.*, 120 *Ga*. 960 (48 S. E. 372), it was held that "An action for personal injuries. against a railroad company, foreign or domestic . . must be brought in the county in which the cause of action originated, if such company have an agent in that county; and a judgment rendered in any other county is utterly void.  Civil Code, § 2334." Each of these decisions was concurred in by all of the Justices.  It is evident, therefore, that unless these decisions are reviewed and reversed, they furnish an answer to the question propounded by the Court of Appeals, as to suits against non-resident ·or foreign corporations for injuries committed by them in this State.  In *Reeves* v. *Southern Ry. Co.*, 121 *Ga*. 561 (49 S. E. 674, 70 L. R. A. 513), it was held that a foreign corporation doing business in this State and having agents located therein for this purpose may be sued and served in the same manner as domestic corporations upon a transitory cause of action, though originating without the State.  If suit may be thus brought on account of a cause of action originating in another State, and not in any county in this State, it follows that as to such a case

the provision contained in section 2334 of the Civil Code that all railroad companies "shall be sued in the county in which the cause of action originated" can not apply.

The real question raised is whether this court will reverse the ruling in the three cases first mentioned. The suit was brought in Bibb county for a tort alleged to have been committed by the agent of the Southern Railway Company, a Virginia corporation, in Pulaski county, the defendant operating a line of railroad and having an agent in each county.

Counsel for plaintiff in error urged, that, in the light of the history of the legislation which has now become codified and embodied in section 2334 of the Civil Code, the decisions first above cited were erroneous and should be reversed. The same counsel who presented this argument before us was also counsel for plaintiff in error in the *Mitchell* case, and it would seem that he then urged the same historical argument. Mr. Justice Turner, in delivering the opinion, said (pp. 847, 848): "We have read the interesting history which counsel for plaintiff in error gives of this section of the code and the ingenious argument which he bases on that history; but we think that this section declares the policy of the State as to suits against all railroad companies, foreign as well as domestic." It was said that the court saw no reason why the General Assembly could not regulate the venue of such suits, and that if there was any reason why it should be provided that suits against domestic railroads for injuries should be brought in the county in which the cause of action originated, the same reason would seem to apply to all railroads doing business in the State. It was added: "Whatever significance may attach to the reason of the law, the plain words of the statute embrace all railroads. We do not feel at liberty to make an exception where the General Assembly has made none." It will thus appear that the history of the legislation on the subject and the argument to be derived therefrom were considered by this court in deciding the *Mitchell* case, and that the conclusion reached was not the result of accident or oversight, but of the fact that the court could not concur in the argument made by counsel or the result at which he arrived. It is true that the members composing the court are now mostly different from those who presided when that decision was made. It is also true that if even a court of last resort determines that it has made a clear and palpable

error, it will correct such ruling.   But the doctrine of stare decisis is
an important one.  It affects the stability and the certainty of the de-
cisions of the court.   A decision concurred in by the entire bench
after argument and careful consideration, and followed in other
cases, will not readily be overturned, unless clearly erroneous.   Es-
pecially is this true where it has stood for a number of years (in
this case for nearly seven years) unquestioned, and where the legis-
lature, with knowledge of the rulings thus made on the subject of
venue, have not deemed it proper to make any change in that re-
gard.   Even if the original ruling were somewhat doubtful, which
we do not mean to assert, this court would be inclined to be con-
servative in regard to overturning·it in such a case.   The very pur-
pose of making decisions is to solve questions of doubt.   The *Mitch-
ell* case has been followed not only in the other cases above men-
tioned, but also in *Southern Railway Company* v. *Grizzle,* 124 *Ga.*
735, 739 (53 S. E. 244, 110 Am. S. R. 191).   In that case an action
for damages was brought against the railway company and its en-
gineer running the train which caused the injury.   The suit was
brought in Gwinnett county.   The railway company filed a petition
to have the case removed to the United States court, alleging that
the engineer was merely a nominal party, joined for the purpose of
preventing a removal of the case; that there was a separable con-
troversy between the plaintiff and the company; that the plaintiff
was a resident and citizen of Georgia, and the railway company was
a corporation under the laws of Virginia, a resident and citizen of
that State, and a non-resident of the State of Georgia.   This court
sustained a refusal to pass an order removing the case to the United
States court.   In doing so it was held that a foreign railroad com-
pany operating in this State and an engineer in its employment
might be jointly sued in the county in which the cause of action
originated, even though the residence of the engineer were in an-
other county in this State.  Again, in *Harvey* v. *Thompson,* 128 *Ga.*
147, 154 (57 S. E. 104, 9 L. R. A. (N. S.) 765, 119 Am. St. R.
373), Mr. Justice Cobb said:  "A foreign railroad company opera-
ting a line of railroad in this State and having agents and a place
of doing business within the State, upon whom, under the general
laws of the State, process may be served, is a resident of this State,
subject to suit under the same rules and regulations where other
residents may be sued," citing the cases of *Reeves* and *Grizzle.*   In
*Southern Railway Company.* v. *Brock,* 115 *Ga.* 721 (42 S. E. 95),

section 2334 of the code was treated as applying to the same company now involved. See also *Ball* v. *Mabry*, 91 *Ga.* 781 (18 S. E. 64) ; *Atlantic Coast Line R. Co.* v. *DuPont*, 122 *Ga.* 251 (50 S. E. 103) ; *Tatum* v. *Seaboard Air-Line Ry.*, 128 *Ga.* 813 (58 S. E. 465) ; *Brock* v. *Louisville & Nashville R. Co.*, 3 *Ga. App.* 492 (60 S. E. 218).

Under what has been said, we do not deem it necessary to enter at length into a discussion of the common law on the subject of venue or the various acts of the legislature and decisions of this court. But it may be profitable to mention some facts in relation to the origin of the section of the code under consideration. In *Davis* v. *Central Railroad &c. Co.*, 17 *Ga.* 323, it was held that the 'act of the 20th of February 1854, "to define the liabilities of the several railroad companies of this State, for injury to or destruction of live stock, killed or injured," etc., was not in violation of the constitution of the State, or that of the United States. On page 333 Benning, J., said: "It is clear that what shall be the place of residence of a corporation is a question over which the Legislature has power," referring to the residence for the purpose of venue. That decision was rendered in 1855. By the act of March 5, 1856 (Acts 1855-1856, p. 154), it was declared that "The several railroad companies of this State shall be liable to be sued in any county in which the cause of action originated, by any one whose person or property has been injured by them, their officers, agents, or employees, in or by the running of their cars or engines," etc. In *Southwestern R. Co.* v. *Paulk*, 24 *Ga.* 356 (decided in 1858), it was held, that, in a suit for damages for the killing of a person by a railroad, the action should be brought in the county where the principal office of the corporation was kept, and that the provision of the act of 1856 in regard to an action for a homicide was prospective in character. By the act of December 13, 1859 (Acts 1859, p. 48), which soon followed the decision just cited, it was declared that no suit against a railroad company in this State should thereafter be dismissed for want of jurisdiction of the court in the county in which the suit might be pending or thereafter brought, if the road of the company was located in or ran through such county, and if the cause of action arose, or the contract was made or to be performed in the county where the suit was instituted.

When the original code, which took effect on January 1, 1863, was compiled, the provision in regard to the venue of suits against railroad companies was embodied in section 3317. As there contained, it was stated that "All railroad companies shall be liable to be sued in any county in which the cause of action originated," etc. Here the expression "all railroad companies" took the place of "the several railroad companies of this State" in the act of 1856. That code was adopted by act of the legislature. In the code of 1868 this provision was included in § 3329. Here again the expression, "all railroad companies," was used. It has been declared that the code superseded all previous legislation inconsistent with it, and this was said in dealing with another section of the act of 1856 and its repeal by a later act. *Georgia Railroad & Banking Co.* v. *Oaks,* 52 *Ga.* 410, 414. The provision as to venue was contained in section 3329 of the Code of 1868, where the words, "all railroad companies," were again used. This code was recognized by the constitution of 1868. Code of 1873, § 5145. The same expression was repeated in the Codes of 1873, 1882, and 1895, the last of which was formally adopted by the legislature. In 1869 the legislature amended section 3329 of the Code of 1868 so "as to embrace all causes of action against railroad companies." Acts 1869, p. 14. In the same year an act was passed to repeal the third section of the act of 1856. Acts 1869, p. 157. This was the act dealt with in the case of *Georgia Railroad &c. Co.* v. *Oaks,* supra. On December 20, 1892, an amendment was made to section 3406 of the Code of 1882, which contained the provision under consideration, by striking out the words "liable to be" and the word "any," and adding a clause to the section. (Acts 1892, p. 59.) Though the legislature were dealing with a section of the code which then declared that "all railroad companies shall be liable to be sued," etc., and were making the provision mandatory instead of permissive, they not only did not alter the words beginning the section so as to confine them to domestic railroads, but declared that the section, when amended, should read thus: "All railroad companies shall be sued in the county in which the cause of action originated," etc. This was not merely a recognition of the broad language of the section but a re-enactment of it. As incorporated in the Code of 1895, which was adopted by the legislature, the section now reads as follows: "All railroad companies shall be sued in the county in

which the cause of action originated, by one whose person or property has been injured by such railroad company, its officers, agents, or employees, for the purpose of recovering damages for such injuries; and also on all contracts made or to be performed in the county where suit is brought; any judgment rendered in any other county than the one in which the cause so originated shall be utterly void. But if the cause of action arises in a county where the railroad company liable to suit has no agent, then suit may be brought in the county of the residence of such company." That section was again amended by the act of December 21, 1898 (Acts 1898, p. 50). The amendment provided for the venue of a suit to set aside and annul an unlawful acquisition of the line of a competing railroad company by a railroad company incorporated under the laws of this State. In dealing with this question the act amended specifically named "a railroad company incorporated under the laws of this State," but made no change in the language with which the section began.

The argument was made that in the original act of 1856 the language employed was "the several railroad companies of this State," that this referred only to domestic railroad companies, that the language employed in the code was merely an abbreviation of that in the act, and was not intended to change its meaning so as to include foreign railroad corporations, and that the original meaning continued through the various codes. From what has been said above, it will appear that the legislature, both in adopting several of the codes, and in amending the section and re-enacting it as amended, employed the broad language, "all railroad companies."

The language of Benning J., in *Davis* v. *Central R. &c. Co.*, 17 *Ga.* 323, in discussing the act of 1854, may be appropriately quoted. He said: "The principle of this statute is, that in certain suits against the railroads the venue of the suit shall be the venue of the wrongful act. This principle is certainly not a novel one. It is the principle of the common law. It is a principle sanctioned and affirmed by a statute as old as the time of Richard II. It is a principle which lies at the foundation of the doctrine of venue, as practiced in England up to this day. The principle rests upon the maxim, that vicini vicinorum facta presumuntur scire—a maxim that makes the suit seek the witnesses, rather than the witnesses seek the suit."

It was urged that the decision in *Hazlehurst* v. *Seaboard Air-Line Railway,* supra, was inconsistent with itself, in that by treating a foreign railroad as a resident it would cease to be liable to attachment. But while the legislature may fix the venue of a suit against a foreign corporation, this does not make it for all purposes a domestic company, or prevent the legislature from giving the right of attachment against it. It was further urged that the decision in *Coakley* v. *Southern Railway Company,* supra, was inconsistent with the law and with other decisions; and that if service could be had by a second original, it would seem that there was no good reason why the original process would not lie in the same county against the same person. If the legislature has power to fix the venue, and has done so, and if the company has no agent in the county where the cause of action originated, but has one in another county, on the subject of service, in addition to the *Coakley* case see *Mitchell* v. *Southwestern Railroad, 75 Ga.* 398; *Devereux* v. *Atlanta Railway & Power Co.,* 111 *Ga.* 855 (36 S. E. 939) ; New York etc. R. Co. *v.* Estill, 147 U. S. 591, 608, 609 (13 Sup. Ct. 444, 37 L. ed. 292).

We have carefully considered the argument of counsel for plaintiff in error. But we do not think that the decisions which we have been requested to review should be overruled on the point under consideration.       *All the Justices concur.*