# ATLANTA, BIRMINGHAM & ATLANTIC RAILROAD CO. *v.* ATLANTIC COAST LINE RAILROAD CO.

1. By section 2798 of the Civil Code, the court of the county in which a contract is to be performed has jurisdiction of a suit brought to recover damages by one railroad company against another such company, alleging a breach of such contract.

2. Where the stockholders of a railroad corporation authorize its board of directors to "purchase, absorb, and merge into itself the stock, property, assets, etc.," of another designated railroad corporation, which is done accordingly, and by the terms of a contract entered into by the acquired railroad, prior to its acquisition by the other corporation, it is provided that "all covenants and agreements herein contained shall be binding upon the successors and assigns of the parties hereto," the acquisition of the one railroad corporation by the other constitutes a merger and not a sale.

(*a*) The acquiring corporation by reason of the merger becomes liable for the payment of all unpaid debts and unperformed contracts of the acquired corporation, and is bound by the terms of the contract entered into between the latter and another corporation prior to the merger.

3. The verdict was demanded by the evidence, and the court did not err, under the facts of this case, in directing a verdict for the plaintiff.
                 JULY 10, 1912.

Action for breach of contract. Before Judge Thomas. Glynn superior court. July 19, 1911.

The Atlantic Coast Line Railroad Company brought its suit against the Atlanta, Birmingham and Atlantic Railroad Company, for the recovery of the sum of $730.29, alleged to have arisen and become due from the breach of a contract originally made between the plaintiff and the Atlantic & Birmingham Railway Company, the predecessor in title of the plaintiff in error. The contract was in respect to certain changes in the track of the plaintiff, as the same was at that time laid in a street in Brunswick, Glynn county, Georgia, which the A. & B. Ry. Co. desired made.

The latter company also desired to lay a track in a street in said city and county, and there was not sufficient room between the track of the plaintiff and the eastern line of the street to allow the A. & B. Ry. Co. to lay its proposed track, and therefore it was necessary for the latter company either to condemn private property to the east of the street, or to contract with the plaintiff to remove its track further to the west before the desired track could be laid. The A. & B. Ry. Co. agreed by contract to pay the expense "of changing the track of the second party from its present location to its proposed position, including all filling necessary to be done for the laying of the track of the second party on such new location at the grade as shown in blue-print or map attached, and also whatever expense may be incurred in making said filling permanent and satisfactory; and should said fill hereafter settle or give way, then the same shall be repaired and restored by the first party, or by the second party at the expense of the first party, provided such settlement or caving shall not be caused by the failure of the second party to maintain its present wharf or bulkhead on the line of the Atlantic Land and Improvement Company's property on Academy creek; it being understood that the first party is under no obligation or duty to maintain said wharf or bulkhead on the wharf of Academy creek; . . it is further understood and agreed that the second party will change its present track location between L and O streets in the new town of the city of Brunswick so as to occupy the new location marked 'Proposed line of A. C. L. R. R.,' and the second party will do the same as promptly as the circumstances will permit, and in doing thereof will charge the party of the first part with all expense of every character arising by reason, not only of the filling in and grading of the new location, the laying of the tracks, cost of ties and appurtenances rendered requisite by the change of line, but as well such further filling as may be made to insure permanency in the maintenance of said fill and new tracks of the second party, and the first party hereby binds itself that it will, within fifteen (15) days from receipt of any bill or bills rendered its general manager, promptly repay unto the said second party . . in making such changes, grading, and filling. And the first party binds itself to hereafter and from time to time pay any and all proper charges which may arise in the re-

pairing or restoring such new embankment so to be constructed for the track of the second party, should the first party become liable therefor under the contract. . . After such new fill is constructed and the track of the second party laid thereon as herein provided, the cost of ordinary maintenance of said fill or track thereon shall be borne by the second party, it being the intent of this contract that after said fill is once constructed and made permanent by the first party to the satisfaction of the second party, that any expense in maintaining said fill or track thereon shall be borne by the second party, save or except such expense as is caused by giving away or caving of the said fill shall always be paid for and borne by the first party, its successors and assigns, provided such caving in or giving away shall not be caused by the failure of the second party to maintain said wharf-line bulkhead on Academy ·creek." The petition alleged: that the A. & B. Ry. Co. "is now, by consolidation and merger," the Atlanta, Birmingham and Atlantic Railroad Company, and that the terms of the contract are binding upon the defendant; that in pursuance of the terms of the contract the track of petitioner was removed to the westward of its original location on said street to the new location named in the contract; that the track as removed rested and lay upon made ground, or a fill, and before the same had become settled and permanent, on account of rains during the months of May and June, 1906, the fill or foundation of petitioner's track became washed away and caved in so as to need and require repairs; that such giving away and caving in was not caused by the failure of petitioner to maintain its wharf-line bulkhead on Academy creek, but that this had been kept and maintained by petitioner in good order and condition; that defendant was notified of the condition of plaintiff's road-bed and requested to make the needed repairs under the terms of the contract, but failed to do so; that plaintiff made the necessary repairs to said road-bed and temporary bulkhead, at an actual cost and expense to plaintiff of the sum of $730.29, and that said sum was a reasonable cost of such repairs. An itemized statement of such cost and expense in making the repairs was attached. A special demurrer to two of the items included in the exhibit, amounting to about $15, was sustained, and these items stricken. No exception was taken to this ruling. A general demurrer to

the petition was overruled, and error is assigned on this ruling. Upon call for trial the defendant made a motion to dismiss the case, on the ground, among others, that the court was without jurisdiction over the defendant on the case as laid. The court overruled this motion, and exceptions were taken. The plaintiff introduced evidence tending to support the material allegations in the petition. There seems to have been no issue of fact. On the close of the plaintiff's evidence defendant moved for a nonsuit. The motion was overruled, and this ruling was excepted to. No evidence was offered by the defendant, and its counsel asked the court to direct a verdict for it. The court, instead, directed a verdict for the plaintiff, which ruling is made one ground of assignment of error by the defendant.

*Bolling Whitfield,* for plaintiff in error.

*Bennet, Twitty & Reese,* contra, cited, on consolidation and merger: Civil Code, §§ 2951, 2957; *State* v. *A. & G. R. Co.,* 60 *Ga.* 269, 274; 3 Beach, Priv. Corp., § 1262; Adams *v.* Yazoo &c. R. Co., 77 Miss. 194 (60 L. R. A. 33, 24 So. 200); Pengreen *v.* Mich. R. Co., 188 Mich. 314 (53 L. R. A. 274, 46 N. W. 635); Chicago &c. R. Co. *v.* Ferguson, 106 Ill. App. 356.

HILL, J. (After stating the foregoing facts.)

1. Error is assigned because the court below overruled a general demurrer to the petition, and a motion to dismiss the case on the ground that the petition showed that the superior court of Glynn county was without jurisdiction to entertain the suit. It is insisted that the suit must be brought in the county of the principal office of the company, Fulton, and that any judgment obtained elsewhere is utterly void, unless the cause of action comes within the provision of Civil Code, § 2798. It is contended that this is not a case in which the right to sue elsewhere than in the county of the defendant's principal place of business is given by statute. We can not agree to this contention. Our Civil Code, § 2798, broadly declares: "All railroad companies shall be sued in the county in which the cause of action originated, by any one whose person or property has been injured by such railroad company, its officers, agents, or employees, for the purpose of recovering damages for such injuries; and also on all contracts made or to be performed in the county where suit is brought; any judgment rendered in any other county than the one in which the

cause so originated shall be utterly void. But if the cause of action arises in a county where the railroad company liable to suit has no agent, then suit may be brought in the county of the residence of such company." The contract was to be performed in Glynn county, where the suit was brought. It will thus appear that the venue of the suit was properly laid in that county. For a general discussion of the history of the above section of the code, see *Bracewell* v. *Southern Railway Company,* 134 *Ga.* 537, 541 (68 S. E. 98).

2. Was the contract entered into between the A. & B. Railway Company and the A., B. & A. Railroad Company one of merger or of sale? It is insisted that the contract is one of sale, and that the fact that the A., B. & A. R. Co. was the successor in title to the original contractor, the Atlantic and Birmingham Railway Company, did not make it liable as its predecessor might have been to the plaintiff under the contract, for the reason that it was a contract between two companies, and, without more, expired when the A. & B. Ry. Co. parted with its title to the property described in that contract; and that the contract was not binding upon any subsequent assignee of the A. & B. Ry. Co. In support of this contention the plaintiff in error cites the case of *Hawkins* v. *Central of Georgia Railway Co.,* 119 *Ga.* 159 (46 S. E. 82), and refers especially to page 164, where it is said that "where a railroad has a right to sell, the buyer is not responsible for more than the purchase-price," and that the court held the purchaser not liable for the duty of its predecessor in title, unless it was assumed in the purchase, or cast upon it by operation of law. But we think, from a careful reading of the contract, that this is a merger and not a sale. The action of the stockholders of the A., B. & A. R. Co., authorizing the acquisition of this property, resolved to "purchase, absorb, and merge into itself the stock, property, and assets," etc., of the A. & B. Ry. Co. It seems, therefore, that the intention of those acquiring this property was that it should be a merger. In the case of the *A. & B. Ry. Co.* v. *Johnson,* 127 *Ga.* 392 (56 S. E. 482, 11 L. R. A. (N. S.) 1119), it was held: "Where two corporations effect a consolidation, and one of them goes entirely out of existence, and no arrangements are made respecting its liabilities, the resulting consolidated corporation will, as a general rule, be entitled to all the property and answerable for

all the liabilities of the corporation thus absorbed." The petition alleged that the A. & B. Ry. Co. "is now by consolidation and merger" the A., B. & A. R. R. Co., and that the terms of the contract are binding upon it. The main contention in the case is, not so much that the defendant company is not liable because of the merger, but that there is no liability at all; that whatever damage was repaired was on account of the bulkhead of the A. C. L. R. Company. But the evidence in the record does not bear out this contention. It appears that the temporary bulkhead was the only one damaged, and the only one on account of which the work was done for which a charge was made. And this being true, the recovery was proper, the repairs being made on account of the temporary bulkhead coming within the terms of the contract.

3. Error is assigned, because the evidence of the plaintiff in the court below was insufficient to show that the reasonably actual cost of making the repairs, as claimed by the plaintiff, amounted to the sum found to be due by the jury, viz., $715.14; and that the cost of the material was not shown, nor its market value; and that the expense for making the repairs on the bulkhead was placed by the contractor upon the plaintiff and not upon the defendant. A proper construction of the contract was that the plaintiff was only bound to repair damages to the fill on A street, caused by caving, settling, etc., in the event damage was occasioned by the giving way of the wharf bulkhead on Academy creek, and that any such damage not thus caused was to be repaired by or at the expense of the defendant. The evidence shows that there was no giving way or other defects in the wharf bulkhead on Academy creek, nor any repairs necessary thereon, it remaining in good condition. The contract did not exempt the defendant from any damage occasioned by the giving way of the temporary bulkhead, which the evidence shows to have occurred. The defendant, therefore, was liable under the contract to bear the expenses of repairs for which suit was brought.

We think the evidence sustained the allegations as laid in the petition. This being true, and no evidence being offered by the defendant denying the correctness of the account sued upon, the verdict was demanded.

*Judgment affirmed. All the Justices concur.*