## CENTRAL GEORGIA POWER COMPANY *v.* STUBBS.

1. Where an electric company engaged in the business of generating electricity and transmitting it over wires to various parts of the State has its principal office in one county, and its dam and power plant for generating the electricity in another, it is liable to suit in still another county for damage there caused by water backed into such county, although it has there no office, agent, agency, or transmission line.

(*a*) In such a case, an act of the legislature fixing the venue of suits against such companies in the county where the cause of action arises does not violate the provision of art. 6, sec. 16, par. 6, of the constitution of this State (Civil Code, § 6543), which declares that "All other cases shall be tried in the county where the defendant resides."

(*b*) Nor does such act violate the provisions of art. 1, sec. 1, par. 25, of the constitution of this State (Civil Code, § 6381), which declares that "All citizens of the United States resident in this State are declared citizens of this State, and it shall be the duty of the General Assembly to enact such laws as will protect them in the full enjoyment of their rights, privileges, and immunities due to such citizenship."

(*c*) Nor does the act violate art. 1, sec. 3, par. 2, of the constitution of this State (Civil Code, § 6389), which reads: "No bill of attainder, ex post facto law, retroactive law, or law impairing the obligation of contracts, or making irrevocable grants of special privileges or immunities, shall be passed."

(*d*) Nor does the act violate art. 1, sec. 1, par. 3, of the constitution of this State (Civil Code, § 6359), which provides that "No person shall be deprived of life, liberty, or property except by due process of law;" nor amendment 14 of the constitution of the United States, declaring: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Civil Code, § 6700.

(*e*) Nor does the act violate art. 1, sec. 1, par. 2, of the constitution of this State, which says that "Protection to person and property is the paramount duty of government, and shall be impartial and complete."

2. Where an electric company erected a dam and created a reservoir for the purpose of generating electricity, and the reservoir contained stagnant water in which mosquitoes were bred and miasma created which caused the sickness of many people in the vicinity of the pond, some of whom moved away and others died, and thus prevented the plaintiff from renting his storehouse and prevented customers from patronizing his mill, such failure to rent and loss of profits would not be the basis to recover damages by the plaintiff from the defendant company, unless the injury to those who were made sick and moved away, etc., was shown to have been willful and done for the purpose of injuring the plaintiff.

(*a*) In so far as the plaintiff, under the allegations contained in paragraph 16 of the petition as amended, seeks to recover damages for loss of the crops of his tenants, the petition is subject to the demurrer filed against it.

(*b*) The owner of farm lands upon which is located his dwelling-house, in which he and his family reside, may recover damages for the sickness of himself and family occasioned by the creation or maintenance by another of a nuisance which is adjacent to the farm and dwelling.

(*c*) Where suit is brought against an electric company to recover damages alleged to have been caused by the construction of a reservoir and the ponding of water therein, and so maintaining the same as to constitute a nuisance dangerous to the life, health, and property of the plaintiff, and it is alleged that the nuisance is part of an electric system which is permanent and intended to remain forever, and that the nuisance is of such a permanent character that it can not be abated, and if abated the permanent damages to the plaintiff's land would be the same, as the abatement of the nuisance would not lessen the damage to the entire value of the land, such averment of permanent damages is not subject to the objection that under the allegations only a temporary nuisance, if any, is shown, and that the plaintiff is entitled to recover, if at all, only the damages sustained until the commencement of the suit.

(*d*) In such a case the plaintiff is entitled to recover, if at all, the entire damages in one action, measured by the difference between the value of the land prior to the creation of the nuisance and its diminished value on account of the nuisance; to which special damages may be added, if a proper case therefor is made.

3. A general allegation that the plaintiff is entitled to damages caused by the nuisance, because "during the fall and winter of 1911 and 1912, covering a period from August 1st, 1911, to April 1st, 1912, petitioner incurred and expended for physician's services to himself, wife, and children the sum of five hundred dollars, and for medicines for himself, wife, and children the sum of two hundred dollars," is not subject to special demurrer calling for an itemized statement of the claim.

DECEMBER 19, 1913. REHEARING DENIED JANUARY 14, 1914.

Action for damages. Before Judge Roan. Newton superior court. November 30, 1912.

J. F. Stubbs brought suit against the Central Georgia Power Company, alleging as follows: The defendant was chartered by the laws of Georgia, and is an electric company engaged in the business of generating electricity and in transmitting the same over wires to various parts of the State of Georgia, and has its principal office and place of business in Bibb county, Georgia. The plaintiff is the owner of 522 acres of land in Newton county, in the forks of the Yellow and Alcovy rivers, this land being his "home place." The defendant is the owner and operator of an electric-power plant located on the Ocmulgee river in Butts county, Georgia, several miles below the lands of the plaintiff, and, for the purpose of procuring power with which to generate electricity, has erected an immense dam about 100 feet high across the Ocmulgee river at that point. The dam backs the water in the Ocmulgee river, South river, and Alcovy river above the same, up the three rivers for a distance of about 15 miles, which backwater reaches the edge of plaintiff's land and almost surrounds it. Much of this water which surrounds petitioner's land is stagnant water. The defendant is the owner of an immense reservoir, about 15 miles in length and from 1 to 5 miles in width, which is now covered with water backed upon it from the dam, which water almost entirely surrounds the plaintiff's land. The defendant negligently left a large amount of growing trees, dead trees, stumps, fallen timber, brush, and other trash in the reservoir, and backed the water upon and over the same, which has decayed; and on account of the decaying timber, stumps, etc., together with the fact that much of the water is stagnant and can not flow off, the air has been poisoned for miles around the pond. The ponding of the water has caused the air to become impregnated with miasma, malaria, and other poisonous germs and noxious odors, which extend over the entire country, and over all of the plaintiff's land.

The poisoned air has bred and is still breeding diseases known as chills and fever and malarial fever, and has made nearly all the people who resided on plaintiff's land, and in the entire country around it for 7 or 8 miles in all directions, sick with chills and fever, or malarial fever, and many of them have died from said diseases. The ponding of the water, mixed with the decaying trees, etc., has also caused millions of mosquitoes of the disease-breeding type to breed in and around the reservoir, and to scatter over all of plaintiff's land and the surrounding country, and has made nearly all the people who reside on plaintiff's land, and for 7 or 8 miles around it in all directions, sick with chills and fever, or malarial fever, and many of them have died from these diseases. The defendant, since the dam was finished and the reservoir was filled with water in December, 1910, or January, 1911, has kept and maintained the reservoir, and is now maintaining it in the same condition described above. Up to the time of the building of the dam, etc., there were no chills and fever, malarial fever, or other diseases of the kind in the neighborhood, and plaintiff and his family enjoyed good health; but early in the summer of 1911 he and his wife and six minor children were stricken with malarial fever, and were unable to work during the rest of the year (about six months), and they continued sick until the end of the year, when they were all compelled to remove away from their home on account of the sickness and from fear of death from the same. They still suffer from the sickness, and have to take medicine. During the time they were sick they suffered great pain and mental anguish, and plaintiff was compelled to pay large sums to physicians for attending himself and his wife and children, and for medicines. All the sickness of himself and family was caused by the poisonous air from the reservoir and from the bites of mosquitoes in and around the reservoir, etc. Damages are alleged in the sum of $2,000 for loss of services of the plaintiff and his wife and children on account of sickness, $1,000 for physicians' bills incurred and for medicines, and $2,000 for his own pain and suffering. He alleges damages on account of the sickness of his tenants, rendering them unable to gather his crops, and injury to his crops, etc., amounting to $2,900. By reason of the alleged nuisance tenants and laborers can not be induced to live upon his land on any terms, he can not rent it, and it has not been rented since 1911;

and by reason of all the foregoing facts his home has been destroyed and his land rendered almost worthless. Before the dam was erected and the reservoir was filled, his land was in a high state of cultivation and worth $50 per acre, or $13,050. He also alleges damages by reason of the total destruction of the value of a storehouse on his land, which he can not rent, in the sum of $1,500; and damages to a grist-mill in the sum of $3,000, because his milling business has been completely broken up and destroyed. His land, storehouse, and mill-house are all located in Newton county; and the part of the reservoir which caused the alleged damages is in Newton county. By amendment to the petition it is alleged, in substance, that the reservoir commences at the power-plant of the defendant in Butts county, and extends through that county to Newton county, and in and through Newton county for a distance of several miles, making one continuous and unbroken reservoir and pond of water all the way from the power-plant in Butts county to plaintiff's land in Newton county, which reservoir the defendant constructed for its entire length through both of the counties; and that the part of the reservoir and pond of water that is in Newton county is a necessary part and parcel of the defendant's entire power-plant and can not be disconnected from the same; and while the defendant may not have an agent in Newton county, it does necessarily carry on its business in that county in the keeping up and maintaining that part of its reservoir that is located in that county. During the time plaintiff and his wife and children were sick, his services were worth $500; the services of his wife were worth $500; and the services of the minor children were worth $700. He did farm work, ran his mill, and looked after his business generally. His children did farm work, house work, and anything that came to hand; and his wife did general house work and any other work around the house that was necessary. There were a number of amendments to meet the special grounds of demurrer as to itemizing the damages alleged, etc. An amendment also alleges that the erection and maintenance of the reservoir and the ponding of so much water therein in Newton county constitutes a nuisance dangerous to life, health, and property, and this nuisance is part and parcel of a $3,000,000 plant and electric system erected and carried on by the defendant, all of which is permanent and intended to remain forever. The

nuisance is of such a permanent character that it can not be abated, and if abated the permanent damage to plaintiff's land would be the same, as the abatement of the nuisance would not lessen the damage to the land.

At the appearance term the defendant, among other pleadings, filed a demurrer to the petition, on both general and special grounds. In addition to challenging the plaintiff's right to recover upon the facts alleged, it raised the question whether under the allegations of the petition the court was without jurisdiction of the defendant. The defendant demurred also to the allegations that the value of the plaintiff's land is permanently diminished or destroyed as a result of the wrongs and injuries complained of, and to those seeking a recovery therefor upon the theory that the nuisance complained of is permanent: (a) Because such damages are not the natural, direct, and proximate result of the wrongs and injuries complained of. (b) Because under the allegations only a temporary nuisance, if any, is shown; and there being no presumption of law that the nuisance will be continued in the future, to the injury of the plaintiff, he is entitled to recover, if at all, only the damages sustained until the commencement of the action, and can not, as matter of law, recover for such damages as the alleged permanent depreciation or destruction of the market value of the land as set out in the petition. The court overruled the demurrers, and the defendant excepted.

*Hatcher & Smith* and *Greene F. Johnson,* for plaintiff in error.
*E. J. Reagan,* contra.

HILL, J. (After stating the foregoing facts.)

1. The demurrers raise two leading questions in this case: (a) Whether the superior court of Newton county, under the allegations of the petition, has jurisdiction of the defendant. (b) Whether the damages sued for are permanent and can be recovered in one action. We consider first the question of jurisdiction. The act of the General Assembly of 1912 (Acts of 1912, p. 68, sec. 4) declares: "All railroad and electric companies shall be sued in the county in which the cause of action originated, by any one whose person or property has been injured by such railroad or electric company, its officers or agents or employees, for the purpose of recovering damages for such injuries; and also on all contracts made or to be performed in the county where suit is brought; any

judgment rendered in any other county than the one in which the cause so originated shall be utterly void. But if the cause of action arises in a county where the railroads or electric company liable to suit has no agent, then service may be perfected by the issuance of a second original, copy to be served upon said company in the county of its principal office and place of business, if in this State; and if not, then on any agent of such company, or then suit may be brought in the county of the residence of such company. . . The following electric companies shall be embraced within the provisions of this code section, to wit: First, electric companies owning a generating plant in one county and having its situs or principal office either in some other county of this State, or beyond the limits of this State; second, an electric company operating a generating plant, whether under lease or otherwise, in one county, and having its situs or principal office either in some other county of this State or beyond the limits of this State; third, an electric company owning a transmission line located in one county and having its situs or principal office in some other county of this State or beyond the limits of this State . . ; fourth, an electric company operating, whether under lease or otherwise, a transmission line located in one county and having its situs or principal office in some other county of this State; fifth, an electric company owning a transmission line located in, or extending through, more than one county; sixth, an electric company operating, whether under lease or otherwise, a transmission line located in or extending through more than one county." In one ground of its demurrer the defendant insists that the act does not give the superior court of Newton county jurisdiction over it, for the reason that the defendant does not reside, has no agency or generating plant or transmission line, and does no business whatever in the county of Newton, one or more of which conditions are contemplated and are necessary to confer jurisdiction under the act. It will be seen that by the terms of the act "all railroad and electric companies" shall be sued in the county in which the cause of action originated. It is alleged in the petition that the cause of action originated in Newton county. We think the allegations as to this are sufficient to show, if true (and they must be so taken on demurrer), that the damage originated in Newton county. But it is insisted that under the definitions of what constitute electric companies within

the meaning of the act, as set out in the quotation above, some county other than Newton has jurisdiction of the suit. We do not think that the construction contended for by the plaintiff in error is in accord with the evident legislative purpose. The legislature was amending a section of the code which provided that all railroad companies must be sued in the county where the cause of action originated, and the evident purpose of the amendment was to make the same provisions of the code apply to "all" electric companies falling within the definition contained in the amending act. The particular classes of electric companies which could be sued in the county where the cause of action originated are enumerated in the act, without regard to whether the cause of action was originated by either of the instrumentalities mentioned in the definition. The venue of the suit is in the county where the cause of action originated. The electric company which can be sued in that county is one falling within the definitions contained in the act. The act provides that "The words 'electric company' as used herein shall embrace and include both all joint stock companies and also all corporations engaged in the business of either generating or transmitting electricity for light, heat, power, or other commercial purposes." This language is broad enough to include the defendant; and even if it be construed that the definitions which immediately follow (and which have been quoted in full hereinabove) serve to restrict or limit it, the defendant would still be included in one or more of the classes of companies enumerated in the special definitions. Falling, therefore, within the definitions contained in the act, it must be sued—where? In the county where the cause of action originated. The allegations of the petition are sufficient to show that the cause of action originated in the county of Newton. Consequently the court of that county has jurisdiction of the suit, so far as the allegations of the present petition and demurrer are concerned. It is argued that the petition does not allege that the defendant company has an agent, agency, transmission lines, or place of business in Newton county, so as to bring it within the operation of section 2259 of the Civil Code as construed by this court in the case of *Tuggle* v. *Enterprise Lumber Co.*, 123 *Ga.* 480 (51 S. E. 433). It is sufficient to say that the legislature passed the act of 1912, above referred to, subsequently to the rendition of that decision, and in that act it is provided:

"But if the cause of action arises in a county where the railroad or electric company liable to suit has no agent, then service may be perfected by the issuance of a second original, copy to be served upon said company in the county of its principal place of business, if in this State, and if not, then on any agent of said company."

It is further insisted that this act, if held applicable to the defendant company as to the present suit, is in violation of art. 6, sec. 16, par. 6, of the constitution of the State of Georgia (Civil Code, § 6543), which provides that "All other civil cases shall be tried in the county where the defendant resides," etc. It is also insisted that the act violates art. 1, sec. 1, par. 25, of the constitution of the State (Civil Code, § 6381), which says, "All citizens of the United States resident in this State are declared citizens of this State, and it shall be the duty of the General Assembly to enact such laws as will protect them in the full enjoyment of the rights, privileges, and immunities due to such citizenship." Also, that the act violates art. 1, sec. 3, par. 2, of the constitution of this State (Civil Code, § 6389), which says, "No bill of attainder, ex post facto law, retroactive law, or law impairing the obligation of contracts, or making irrevocable grants of special privileges or immunities, shall be passed." Also, that the act violates art. 1, sec. 1, par. 3, of the constitution of this State (Civil Code, § 6359), which says, "No person shall be deprived of life, liberty, or property except by due process of law;" and amendment 14 of the U. S. constitution (Civil Code, § 6700), which provides: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Also, that the act violates art. 1, sec. 1, par. 2, of the constitution of the State of Georgia, which declares: "Protection to person and property is the paramount duty of government, and shall be impartial and complete." It is further contended that the cause of action alleged in the petition having accrued prior to the approval of the act of 1912, that act can not be held applicable thereto.

We do not think that the act in question is unconstitutional for

any of the reasons assigned in the demurrer. It is not retroactive. The act is remedial in its nature, and merely fixes the place where the venue of a suit like the present shall be. The case of *Maynard v. Marshall,* 91 *Ga.* 840, 845 (18 S. E. 403), is cited by the plaintiff in error, wherein Judge Bleckley said: "It is also 'a general rule applicable to amending statutes, that they are to be construed as intended to have operation on future transactions only, and as having no retroactive purpose not plainly expressed." While the act of 1912 is amendatory of the law as then existing with reference to the venue of suits of the kind like the present, the statement of the general rule as to retroactive statutes made by Judge Bleckley can have no application to a case of the kind with which we are dealing. There the amendatory act dealt with the right to recover interest—the substance of the thing,—but here the act relates merely to the place where the right may be enforced. It is remedial, and is not retroactive within the meaning of the provision of the constitution cited. See *Jefferson Fire Insurance Co.* v. *Brackin,* 140 *Ga.* 637 (79 S. E. 467). In the case of *Georgia Railroad &c. Co.* v. *Bennefield,* 138 *Ga.* 670 (75 S. E. 981), Chief Justice Fish said: "If, when an action is brought in the county in which the cause of action originated, where the defendant company has no agent, the court has power to perfect service upon the defendant, it must be true that the legislature may provide for perfecting service upon the defendant in such a case, as is done by the Civil Code, § 2801." And see *Bracewell* v. *So. Ry. Co.,* 134 *Ga.* 537, 541 (68 S. E. 98); *Davis* v. *Central Railroad &c. Co.,* 17 *Ga.* 323; *A., B. & A. R. Co.* v. *A. C. L. R. Co.,* 138 *Ga.* 353, 356 (75 S. E. 468). The determination of the question of domicile of persons natural and artificial, and of the venue of suits, is left to the General Assembly. *Gilbert* v. *Ga. R. &c. Co.,* 104 *Ga.* 412, 416 (30 S. E. 673); *Davis* v. *Central R. Co.,* 17 *Ga.* 323, 333. Holding, therefore, that the act of 1912 is not unconstitutional for any reason assigned, the superior court of Newton county has jurisdiction over "all electric companies" falling within the definitions contained in the act, where the cause of action originated there; and in such a case it is immaterial whether the electric company causing the injury has an agent, agency, or home office in such county, or whether its transmission lines are located there. It is sufficient, under the act, that the cause of action originated there.

If the dam and generating plant of the defendant are in one county, and the home office in another, yet if .the dam of the defendant causes the water to back into Newton county and there to become a nuisance which is the cause of the injury alleged, the last-named county has jurisdiction of a suit brought by one to recover damages for the wrongful act alleged to have been committed in that county. The defendant is supposed to be where its instrumentality causing the injury is, for the purposes of such a suit; and if its water in its reservoir is spread out so as to reach into a county different from the county of its home office or the location of its generating plant, and originates the cause of action there, the county where the water is that causes the injury is the county of the venue of the suit, within the meaning of the act of 1912. In other words, the water in Newton county is a necessary part of the water in the reservoir of the defendant; and if it causes injury in that county, the courts of the latter have jurisdiction of a suit brought by the injured one to recover damages therefor.

The reservoir in this case, which extends from the generating plant in Butts county to the plaintiff's land in Newton county, is analogized to a railroad running through many counties; and where injury is occasioned by the running of its engines and cars in one of the counties, jurisdiction is given to the court of the county where the tort is committed. In the case of *Bracewell* v. *So. Ry. Co.,* supra, it is said: "By the act of December 13, 1859 (Acts 1859, p. 48), which soon followed the decision just cited, it was declared that no suit against a railroad company in this State should thereafter be dismissed for want of jurisdiction of the court in the county in which the suit might be pending or thereafter brought, if the road of the company was located in or ran through such county, and if the cause of action arose, or the contract was made or to be performed, in the county where the suit was instituted."

. 2. We think that the demurrer should have been sustained so far as the allegations with respect to damages for destroying the value of the storehouse and stand of the plaintiff, and for breaking up and destroying his business of milling, are concerned. The allegations as to these damages are, that by reason of the nuisance the plaintiff has no neighbors, they having been run off by the wrongful acts of the defendant; and that on account of the wrong-

ful act of the defendant the plaintiff's "storehouse and stand are of no value, and petitioner has been damaged by their destruction in the sum of $1,500, which he prays he may recover of the defendant." The allegation as to the mill is, that plaintiff had a grist-mill on his land and used it as such, grinding corn for his neighbors, and made a profit of $500 a year out of it, but that now he has no neighbors, they having been run off by the alleged wrongful acts of the defendant, and he does no grinding, and "his business of milling has been completely broken up and destroyed" by the wrongful acts of the defendant, to his damage in the sum of $3,000. The fact that the plaintiff's neighbors had been injured by the nuisance, by being made sick, caused to die, and to move from the neighborhood in which plaintiff lived, would not be the basis of a cause of action by this plaintiff, any more than if a railroad or other person were to inflict injury upon them. A distinction exists between an injury to one's property, and an injury to one's neighbors whereby one's property may be incidentally damaged or destroyed. It is not alleged that because of the nuisance the neighbors could not go to the store to trade, or to the mill for grist; but the allegation is that the neighbors were made sick and caused to remove from the neighborhood, whereby plaintiff suffered damage, etc. A mere failure to operate the mill and rent the storehouse, occasioned by the injury to the neighbors, would not be the basis to recover damages, unless it should appear that the nuisance was wilfully created and maintained for the purpose of causing these results. If the allegations were sufficient to show that the mosquitoes produced by the nuisance infested the storehouse or mill to such an extent that customers of the neighborhood were prevented from patronizing them; or that the miasma and foul odors as alleged permeated the mill and store so as to drive away the customers of those places, the case would be different. It is true that the plaintiff by amendment alleges that he does not sue for loss of rents in this action, but that the depreciation in the rental value of his land and premises should be taken into consideration by the court and jury in determining the amount of damages plaintiff has sustained; but this can not apply to the allegations under consideration, because the prayers contained in these paragraphs are that the plaintiff may recover the sum of $1,500 in the one case and $3,000 in the other, and the amendment does not pretend to strike the prayers for recovery.

It is further alleged that by reason of the wrongful acts of the defendant, as set out in the foregoing statement of facts, the market value of plaintiff's land and premises has decreased over half, and that the depreciation in the market value occurred before the bringing of the suit, and was complete and permanent at the time of bringing the suit. The eighth ground of the demurrer attacks the right of the plaintiff to recover for the alleged permanent depreciation in the value of the plaintiff's land. This court has laid down the rule as to when permanent or temporary damages can be recovered in a case like the present. In *Danielly* v. *Cheeves,* 94 *Ga.* 263 (3), 264 (21 S. E. 524), it was held: "A nuisance to the plaintiff's cleared and tillable land (the injury consisting in overflowing or saturating the same with water), although resulting from a cause intended to be perpetually operative and of a nature so to operate gradually and continuously, created in the year 1878, was actionable in 1884 for damage on account of diminished or suspended fertility occasioned thereby with reference to the crops for the years 1882 and 1883; and the same nuisance, having been continued with like effect, was again actionable in 1888 for damage on account of diminished or suspended fertility with reference to the crops for the years 1884, 1885, 1886, and 1887; and the same nuisance, having been continued with like effect, was again actionable in 1889 for damage on account of diminished or suspended fertility with reference to the crop for the year 1888. If, however, the effect of the nuisance, at any stage, was to destroy wholly and permanently the fertility of the land, so that abating the nuisance and withdrawing the excess of water occasioned thereby would not restore the land and render it again fertile, the right to maintain successive actions relatively to subsequent years ceased, and a single action and recovery for such destruction could be maintained and would be final." See also *City Council of Augusta* v. *Lombard,* 101 *Ga.* 724 (28 S. E. 994); *Cobb* v. *Wrightsville &c. R. Co.,* 129 *Ga.* 377, 381 (58 S. E. 862); *Farley* v. *Gate City Gas Light Co.,* 105 *Ga.* 323 (31 S. E. 193). The petition alleges that the nuisance complained of is permanent in its nature, and its construction and maintenance depreciates the value of plaintiff's land one half, and that this depreciation was complete at the time of bringing the suit. The plaintiff's insistence is that, under these circumstances, he has the right to recover the difference in the value of the land

before and after the creation of the nuisance. In the case of *Farley* v. *Gate City Gas Light Co.,* supra, Justice Little said: "While damages can not be awarded on the assumption that the nuisance is to be continued permanently (Uline *v.* N. Y. Central R. Co., 101 N. Y. 98 [4 N. E. 536, 54 Am. R. 661]), yet, in actions for nuisances, as in other actions for torts, the measure of damages is compensation to the plaintiff for the actual injury inflicted. 5 Am. & Eng. Enc. L. 38. Therefore, while a recovery may not be had for prospective damages which might be inflicted were the nuisance continued, yet where the damages inflicted by the nuisance while in existence are of a permanent character, and go to the entire value of the estate affected by the nuisance, a recovery may be had of the entire damages in one action. Wood's L. Nuis. § 856, and authorities cited; 3 Sedg. Dam. § 947, and authorities cited. Where the injury goes either to the market or rental value of the premises, the difference in the market or rental value before the nuisance existed and such value after the nuisance is created is the measure of damage [citing authorities]. Thus, if the plaintiff's premises had sustained permanent damage by reason of the existence of the nuisance prior to the bringing of the first action; if trees, shrubbery, flowers, etc., had been killed or injured; if the well of water had been injured and rendered wholly or partially useless; or if the soil had been rendered wholly or partially unfit to produce vegetation, or its market value diminished, or any other permanent injury done to the plaintiff's lot or premises, the verdict in the former action must be presumed to have covered such damages, and therefore no second recovery for the same injury could be had. Where the nuisance itself is permanent in its character, and the injury is complete, all damages, both past and prospective, are recoverable and indeed must be recovered in one action, as no subsequent action therefor can be maintained." See *Louisville & Nashville R. Co.* v. *Jackson,* 139 *Ga.* 543 (77 S. E. 796).

In the instant case the petition alleges that the nuisance complained of is the ponding of a large body of water in a reservoir which extends for miles in length, and reaches the edge of plaintiff's land, and almost surrounds it; and that this reservoir is part of a large and extensive plant that must of necessity be permanent. On demurrer the allegations in the plaintiff's petition which are well pleaded must be taken to be true; and this being so, it neces-

sarily follows, according to the allegations of the petition, that the defendant will perpetually keep its power-plant and reservoir, containing stagnant water, which reaches plaintiff's land and almost surrounds it. *Central Georgia Power Co.* v. *Ham,* 139 *Ga.* 569 (77 S. E. 396).

Headnote 2 (*a*) does not require any elaboration.

3. The special demurrer calling for an itemization of the items composing the plaintiff's claim for damages because "During the fall and winter of 1912, covering a period of from August 1, 1911, to April 1, 1912, petitioner incurred and expended for physician's services to himself, wife, and children the sum of five hundred dollars, and for medicines for himself, wife, and children the sum of two hundred dollars," was properly overruled.

Except as herein pointed out, the court committed no error in his ruling on the demurrers.

*Judgment affirmed in part and reversed in part, with direction. All the Justices concur.*