12363.   HEAD *et al v.* TOWALIGA FALLS POWER CO.

There being evidence that would have supported a verdict for the plaintiffs for some amount of damages, and no evidence whatever to support a verdict for the defendant, a new trial should have been granted.

DECIDED JUNE 6, 1921.

Action for damages; from Butts superior court — Judge Searcy. March 26, 1921.

The action was for damages on account of a nuisance. The plaintiffs alleged, in substance, that they were the owners of certain land which was damaged by the defendant company in the following manner: The defendant erected a large concrete dam over the Towaliga river, and the dam caused the water to flow back for several miles up stream and create a pond which covered more than a thousand acres of land, and in which trees, logs, drift timber, brush and vegetable matter were submerged and rotted and decayed, emitting poisonous air and miasma and malaria; the pond was stagnant and in it were generated in great numbers malaria-bearing mosquitoes; the adjacent lands were permeated with poisonous and impure air, miasma, and malaria emitted from the pond, and were infested with mosquitoes bred and generated in it, rendering the land unhealthy and unfit for habitation and almost valueless. Before the dam was built the lands were free from impure and poisonous air, miasma, and malaria, were not infested with mosquitoes, and were a healthful and desirable place to farm and reside, and were worth $50 per acre, and the conditions described caused the value of the lands to depreciate to $5 per acre. Prior to the erection of the dam the premises rented each year for

16 bales of cotton, and for the past four years the plaintiffs have in consequence of the facts stated been unable to get more than 8 bales rent for the lands. The plaintiffs alleged that on account of the depreciation of the value of the land they were damaged $45 per acre, or the sum of $20,225, and the further sum of $1,920 as a decrease in the rental value of the land during the years 1909, 1910, 1911, and 1912, for which sums they prayed judgment. On the trial the plaintiffs abandoned any claim for damage to their estate in the lands, and introduced evidence in support of their claim for damages for the depreciation of the rental value during the years covered by the suit.

The evidence for the plaintiffs showed that they were unable to rent the lands, on account of the condition described in the petition, that they were compelled to cultivate the lands themselves by means of croppers, and that the croppers were made sick by the condition of the miasma and malaria, and were unable to gather the crops, and that as a consequence they lost the entire rental of the lands for the four years. At the conclusion of the plaintiff's evidence the court, on motion of the defendant, directed a verdict for the defendant. There was no direct exception to the direction of a verdict, and a motion for a new trial was filed by the plaintiffs on the general grounds alone; the motion was overruled, and the movant excepted to the overruling of the motion.

C. L. Redman, E. M. Smith, for plaintiffs.

G. Ogden Persons, E. J. Reagan, W. E. Watkins, for defendant.

HILL, J. (After stating the foregoing facts.) As the exceptions are only to the overruling of the motion for a new trial, based upon the usual general grounds, this court cannot review the direction of a verdict. Kelley v. Cartledge, 151 Ga. 179 (106 S. E. 93). Neither will this court interfere with the discretion of the trial court in overruling a motion for a new trial if there is any evidence to support the verdict for the defendant. In actions for nuisances, as in other actions for torts, the measure of damages is compensation to the plaintiff for the actual injury inflicted. Where the injury goes either to the market, or rental value of the premises, the difference in the market or rental value before the nuisance existed and such value after the nuisance was created is the measure of damages. Central Georgia Power Co. v. Stubbs, 141 Ga. 185 (80 S. E. 636). The evidence of the plaintiffs in this case,

uncontradicted, shows that they lost the full rental value of their lands for the four years covered by their suit, and their evidence as to the measure of this loss was that this rental value before the existence of the nuisance amounted to 16 bales of cotton a year, for the four years for which the suit was brought, but after the existence of this nuisance and the results therefrom they were unable to get more than 8 bales for the land. The evidence further showed that the land was not rented by the plaintiffs, but that they could not get renters, on account of the condition caused by the nuisance, and they were compelled to cultivate the land themselves by means of croppers, and that these croppers were unable to gather the crops, because they were rendered sick and enfeebled by the malarial condition caused by the dam erected by the defendant. It is contended for the defendant that the plaintiffs cannot recover for these rents, because the proof shows that the land was not rented, but was cultivated by them; that if any right of action existed it existed in the croppers or tenants for their share of the crops that they were entitled to receive and which were destroyed by the conditions surrounding the land; that therefore the evidence failed utterly to support the plaintiffs' cause of action, the plaintiffs having abandoned any claim for permanent injury to the land and only sued for the lost rents. The measure of damages recoverable by the owners of the premises, assuming that they are entitled to recover at all, on account of the nuisance affecting the rental value of the property, is the same whether they rent the premises to others or retain possession themselves. In other words, the measure of damages in either case would be the depreciation in the rental value, caused by the nuisance. If they could not rent the premises during that time, because of the nuisance, the fact that they cultivated the premises themselves by croppers should be regarded only as the performance of a duty to minimize the damages growing out of the nuisance, with the incidental effect that the amount to be received from the croppers might be relevant evidence upon the question of the loss of rental value flowing from the existence of the nuisance. In other words, that amount they would receive through the croppers should be deducted from the amount of the value of the rent lost by the nuisance. As stated above, the plaintiffs' evidence proved their claim of diminution of rental value of the land caused by the nuisance for the four years covered by their

suit; and under this evidence this is true even after deducting the amount that might have been received by them from their croppers during the same period. The fact that an owner of land cultivates the land himself, because he cannot get any one to rent it, on account of a nuisance, should not deprive him of compensation for the resulting injury. Certainly it would seem that the owner of property of a given rental value is entitled, if he elects to be his own landlord and tenant, to get an amount of enjoyment out of it equal to the sum he would be obliged to pay for it to another. *Swift* v. *Broyles,* 115 *Ga.* 887 (42 S. E. 277, 58 L. R. A. 390). The only evidence in the record being the evidence in behalf of the plaintiffs, and this tending to prove their claim, it necessarily follows that the verdict for the defendant, being without any evidence whatever to support it, is contrary to law.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*